861 F.2d 1211
 GLENPOOL UTILITY SERVICES AUTHORITY, a Utility Trust,
Plaintiff-Appellee,
v.
CREEK COUNTY RURAL WATER DISTRICT NO. 2,
Defendant-Third-Party-Plaintiff- Appellant,
and
Jody Sweetin, an Individual, Defendant-Intervenor,
v.
FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF
AGRICULTURE, United States of America,
Third-Party-Defendants.
GLENPOOL UTILITY SERVICES AUTHORITY, a Utility Trust,
Plaintiff-Appellee,
v.
CREEK COUNTY RURAL WATER DISTRICT NO. 2,
Defendant-Third-Party-Plaintiff- Appellee,
and
Jody Sweetin, an Individual, Defendant-Intervenor,
v.
FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF
AGRICULTURE, United States of America,
Third-Party-Defendants-Appellants.
 Nos. 86-2226, 86-2410.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 21, 1988.
 
 Peter Steenland and Stephen L. Andrew (D. Kevin Ikenberry of McCormick, Andrew & Clark, A P.C., Tulsa, Okl., with them on the briefs), of McCormick, Andrew & Clark, A P.C., Tulsa, Okl., for defendant-appellant and third party plaintiff-appellant Creek County Rural Water Dist. No. 2.
 Phil Frazier of Frazier, Smith & Phillips, Tulsa, Okl., for plaintiff-appellee Glenpool Utility Services Authority, a Utility Trust.
 F. Henry Habicht II, Asst. Atty. Gen., Layn R. Phillips, U.S. Atty., and Peter Bernhardt, Asst. U.S. Atty., Tulsa, Okl., and Peter R. Steenland, Jr., Martin W. Matzen, Laura E. Frossard, Attys., Dept. of Justice, Washington, D.C., on the brief, for the third party defendant-appellant Farmers Home Admin.
 Neal E. McNeill, City Atty., and Patrick T. Boulden, Asst. City Atty., Tulsa, Okl., filed an amicus curiae brief for the City of Tulsa, Okl.
 Michael R. Vanderburg, Broken Arrow, Okl., filed an amicus curiae brief for the City of Broken Arrow, Okl.
 Louis T. Rosenburg, Rosenburg & Gray, San Antonio, Tex., filed supplemental authority for City of Broken Arrow, Okl.
 Jay M. Galt of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., filed an amicus curiae brief for the Oklahoma Rural Water Assn.
 Ronald D. Cates of the Owasso Public Works Authority, Owasso, Okl., filed an amicus curiae brief for the Owasso Public Works Authority.
 Lynn C. Rogers of the Oklahoma Ass'n of Mun. Attys., and Diane Pedicord, of the Oklahoma Mun., League, filed an amicus curiae brief for the Oklahoma Ass'n of Mun. Attys. and the Oklahoma Ass'n of Mun. Attys.
 Before TACHA, BARRETT and EBEL, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 This is an appeal from a final judgment of the district court denying declaratory and injunctive relief in a suit concerning the rights to furnish water service to an annexed area of land. The issues on appeal are whether the defendant rural water district possesses a right, as against Glenpool, to furnish water service to the area in question; if such a right exists, whether it was granted by the Oklahoma Legislature; and, if such a grant was made, whether it violates provisions of the Oklahoma Constitution or the United States Constitution. We reverse in part and remand.
 
 
 2
 In 1964, the Board of County Commissioners of Creek County, Oklahoma, incorporated Creek County Rural Water District No. 2 (District No. 2) to provide water service within specific territorial limits. District No. 2 obtained a loan from the Farmers Home Administration (FmHA) and used the funds as construction money for its rural water system. As security for the loan, the FmHA received a mortgage covering rights, facilities, and real property owned by District No. 2. In 1967, District No. 2 annexed additional territory within Creek and Tulsa Counties, including an area now known as Eden South.
 
 
 3
 Plaintiff Glenpool Utility Services Authority (Glenpool) is a public trust, with the City of Glenpool, Oklahoma, as its beneficiary. It was created pursuant to the laws of the State of Oklahoma for the purpose of providing utility services, including water and sewer service, to areas inside and outside the corporate limits of the City of Glenpool. In 1983, the City of Glenpool annexed new territory into its city limits. The newly annexed property included the area known as Eden South, although Eden South also remained within the territory of District No. 2. At the time of the annexation, Glenpool was aware that District No. 2 claimed the exclusive right to serve the Eden South area with water.
 
 
 4
 Plaintiff Glenpool brought an action in Oklahoma state court against defendant District No. 2 requesting a declaratory judgment that Glenpool possessed the exclusive right to furnish water to the Eden South area. Defendant District No. 2 counterclaimed, asking for a declaratory judgment that it had the exclusive right to furnish water to the Eden South area and requesting an injunction enjoining the plaintiff from constructing water service lines to the area. After District No. 2 brought a third party petition joining FmHA as the holder of a real estate mortgage on land that included the Eden South area, the action was removed to federal district court. That court allowed Mr. Jody Sweetin, owner of the Eden South property, to intervene as a defendant. At the time of the trial, plaintiff Glenpool was providing the water service to the individuals residing in Eden South.
 
 
 5
 The district court found that District No. 2 had a water line that ran within fifty feet of the Eden South property and that any prospective user within the District No. 2 territory could receive water service from District No. 2 simply by making application to it. The water district would then be under an obligation to provide the service, even if that provision would require a line extension or a road bore. Because of these facts, the district court found that District No. 2 could and would provide water service to Eden South within a reasonable time of an application for such service.
 
 
 6
 The district court applied the state statute that empowers a rural water district to borrow funds from the federal government, Okla.Stat. tit. 82, Sec. 1324.10 (Supp.1988), the Oklahoma constitutional prohibition against the legislature granting an exclusive right, Okla. Const. art. 5, Sec. 51, and the federal statute that protects an association which has borrowed federal funds from certain curtailments of its service during the term of the loan, 7 U.S.C. Sec. 1926(b). The court held that in light of these statutory and constitutional provisions, neither Glenpool nor District No. 2 had an exclusive right to furnish water service to the Eden South property. District No. 2 and FmHA appealed.
 
 
 7
 We review the district court's conclusions of law denying relief to District No. 2. Conclusions of law are subject to de novo review upon appeal, Boise City Farmers Coop. v. Palmer, 780 F.2d 860, 866 (10th Cir.1985), even if the appellate court relies upon the findings of fact below, United States v. Mississippi Valley Generating Co., 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961).
 
 
 8
 Congress enacted 7 U.S.C. Sec. 1926(b) as part of a federal statutory scheme to extend loans and grants to certain associations providing soil conservation practices, water service or management, waste facilities, or essential community facilities to farmers, ranchers, and other rural residents. 7 U.S.C. Sec. 1926. Regarding those associations, the statute states:
 
 
 9
 The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.
 
 
 10
 7 U.S.C. Sec. 1926(b).
 
 
 11
 In construing a statute, a court must begin with the statutory language itself. Wilson v. Stocker, 819 F.2d 943, 948 (10th Cir.1987). When, as in this case, the statute is unambiguous and free of irrational result, that language controls. Edwards v. Valdez, 789 F.2d 1477, 1481 (10th Cir.1986).
 
 
 12
 We agree with the Fifth Circuit that section 1926(b) "indicates a congressional mandate that local governments not encroach upon the services provided by [federally indebted water] associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means." City of Madison, Miss. v. Bear Creek Water Ass'n, Inc., 816 F.2d 1057, 1059 (5th Cir.1987); accord Jennings Water, Inc. v. City of North Vernon, Ind., 682 F.Supp. 421, 425 (S.D.Ind.1988) ( "[S]tatute ... should be applied broadly to protect rural water associations indebted to the FmHA from competition from expanding municipal systems."); Rural Water Dist. No. 3 v. Owasso Utils. Auth., 530 F.Supp. 818, 824 (N.D.Okla.1979) (statute prohibits municipalities' exercise of their powers to sell water "when their exercise would result in competition with a Rural Water District"). The present case, however, is a simpler one than that confronted by the Fifth Circuit.
 
 
 13
 The face of the statute makes clear that Congress protected the indebted rural association from curtailment or limitation by impinging municipal corporations. The district court correctly held that District No. 2 came within the purview of section 1926(b) and had met the statute's threshold requirements, having a continuing indebtedness under section 1926 and having "made [service] available" to the area, by virtue of its line adjacent to the property and its responsibilities to applicants within its territory. The statute prohibits Glenpool from using annexation of Eden South to curtail or limit the service made available by District No. 2. Glenpool may not legally use "inclusion" of Eden South "within the boundaries of any municipal corporation" as a springboard for providing water service to the area, and thereby limit the service made available by District No. 2.
 
 
 14
 Glenpool contends on appeal that the present situation is one in which a rural water district and a federal agency have attempted to contract away the property rights of a third party (Glenpool) and that such an action violates the tenth amendment to the U.S. Constitution by infringing unconstitutionally upon the powers and duties of local governments. Glenpool's contentions miss the mark.
 
 
 15
 The tenth amendment to the U.S. Constitution provides:
 
 
 16
 The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.
 
 
 17
 U.S. Const. amend. X. The concerns preserved in the tenth amendment are of vital importance, and we do not deprecate efforts to preserve the essential structure of our federal system. A constitutional analysis in the present case, however, demonstrates that the statute does not violate the tenth amendment.
 
 
 18
 Section 1926(b) of title 7 of the United States Code is most appropriately viewed as a congressional enactment resting upon Congress' powers under the spending clause of the United States Constitution.[1] See City of Madison, Miss. v. Bear Creek Water Ass'n, Inc., 816 F.2d 1057, 1061 (5th Cir.1987). That clause provides "Congress shall have the power to ... provide for the ... general welfare of the United States." U.S. Const. art. I, Sec. 8, cl. 1. The spending clause gives a wide range of discretion to Congress, not the courts. Helvering v. Davis, 301 U.S. 619, 640, 57 S.Ct. 904, 908, 81 L.Ed. 1307 (1937). "The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." Id. Here the congressional action is well within that wide discretionary range.
 
 
 19
 In examining whether a congressional action under the broad powers of the spending clause is constitutional, we must ascertain if the state has accepted the federal funds, for acceptance of the funds entails acceptance of the conditions that accompany them.
 
 
 20
 [L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract."
 
 
 21
 Pennhurst State School & Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981) (citing Steward Mach. Co. v. Davis, 301 U.S. 548, 585-98, 57 S.Ct. 883, 890-96, 81 L.Ed. 1279 (1937); Harris v. McRae, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980)). Congress must impose any conditions unambiguously, id., and it may not impose conditions "unrelated in subject-matter to activities fairly within the scope of national power and policy," Steward Mach. Co. v. Davis, 301 U.S. 548, 590, 57 S.Ct. 883, 892, 81 L.Ed. 1279 (1937). Here, section 1926 sets forth both the mechanism for making the loans and the conditions that are to accompany them. The conditions of section 1926(b), moreover, serve as protection of federal funds advanced under the congressional spending power and pursuant to a national policy concerned with water management and rural populations. Congress clearly acted within its powers.
 
 
 22
 Oklahoma law provides for the creation of rural water districts by boards of county commissioners. Okla.Stat. tit. 82, Sec. 1324.6 (Supp.1988). Since 1965, by statute "the district shall be ... an agency and legally constituted authority of the State of Oklahoma" for the purposes set forth in the statutory provisions. Okla.Stat. tit. 82, Sec. 1324.6 (Supp.1988); id., Sec. 1306 (1970) (repealed 1972) (predecessor of Sec. 1324.6). Since 1963, Oklahoma law has specifically stated that rural water districts created under these statutory provisions are empowered
 
 
 23
 to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America, and, in connection with any such loan or grant, to enter into such agreements as the United States of America or such corporation or agency may require.
 
 
 24
 Okla.Stat. tit. 82, Sec. 1324.10(4) (Supp.1988); id., Sec. 1309(4) (1970) (repealed 1972) (predecessor of Sec. 1324.10). Oklahoma thus authorized District No. 2 to borrow from the federal government and to enter into any required agreements in connection with those loans. In so borrowing, Oklahoma--through its authorized entity District No. 2--bound itself and all of its subdivisions, including the City of Glenpool, to the conditions it had accepted. When, as in this case, the requirements of constitutional analysis under the spending clause have been met, the tenth amendment does not stand as a bar to congressional action. See Oklahoma v. United States Civil Serv. Comm'n, 330 U.S. 127, 143, 67 S.Ct. 544, 553, 91 L.Ed. 794 (1947). The State bound itself by accepting a condition legitimately within the discretionary range of Congress.
 
 
 25
 Glenpool contends that the Oklahoma statute authorizing the water district to borrow from the federal government, coupled with the actual contracting of the water district with the FmHA, amounts to an attempted granting of an exclusive right by the Oklahoma Legislature, in contravention of the Oklahoma Constitution. We disagree. The Oklahoma Constitution provides in article 5, section 51 that
 
 
 26
 [t]he Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities with this State.
 
 
 27
 Okla. Const. art. 5, Sec. 51. As shown above, the action of the Oklahoma Legislature in this case amounts to having authorized the acceptance of a condition rather than having granted an exclusive right. The district's right to exclude Glenpool's water service here was granted to the rural water district by the federal legislature through section 1926(b), and not by the Oklahoma state legislature. Congress granted District No. 2 the right to be free from municipal intrusion upon its water service during the time of its indebtedness, and Congress can terminate that right at any time.
 
 
 28
 Finally, there are several respects in which the right that we find District No. 2 to possess here is a qualified, and not an "exclusive," right. It is a right that is not permanent, but contingent upon the district's outstanding federal debt; it does not prevent the municipality from regulating such aspects as water lines for fire hydrants; and it does not prevent the municipality from purchasing facilities from the district, if done pursuant to FmHA regulations. See City of Madison, Miss. v. Bear Creek Water Ass'n, Inc., 816 F.2d 1057, 1061 (5th Cir.1987) (listing above factors and stating "[t]he limits on the provision of water service are thus restricted in time and in scope so as not to disable the city severely from performing its governmental function"). The Oklahoma constitutional provision is therefore not applicable here.[2]
 
 
 29
 Defendant District No. 2 contends that, even if the Oklahoma Legislature granted an exclusive right to the district, the Oklahoma constitutional provision barring such a grant is preempted by 7 U.S.C. Sec. 1926(b) under the supremacy clause of the United States Constitution, U.S. Const. art. 6, cl. 2. Because we hold that the Oklahoma constitutional provision is not applicable to this case, we need not reach that federal constitutional issue.
 
 
 30
 We decide, furthermore, only among the parties before the court concerning the right to furnish water to the Eden South property. Absolute exclusivity of any such right is beyond the scope of this dispute.
 
 
 31
 Congress acted within its power in passing 7 U.S.C. Sec. 1926. Oklahoma authorized District No. 2 to borrow under that legislation, and in so doing accepted the conditions accompanying any such loans. We hold that Glenpool is precluded by the statute from curtailing District No. 2's service by including the district's territory within the boundaries of Glenpool, and that here there was no state legislative grant of an exclusive right. We reverse the portion of the district court's judgment denying an exclusive right to District No. 2 to the extent that that judgment is inconsistent with this opinion and remand for entry of judgment and any proceedings necessary to carry out this order.
 
 
 32
 REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 Even if one views Sec. 1926(b) as a congressional enactment resting upon Congress' powers under the commerce clause, U.S. Const. art. I, Sec. 8, cl. 3, an attack upon the constitutionality of the statute must surely fail here, especially in the aftermath of Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 552, 105 S.Ct. 1005, 1018, 83 L.Ed.2d 1016 (1985) ("State sovereign interests, then, are more properly protected by procedural safeguards inherent in the structure of the federal system than by judicially created limitations on federal power.")
 
 
 [2]
 Even if one accepts Glenpool's view of the Oklahoma legislative action, it is not at all clear that we must reach the Oklahoma constitutional issue. Oklahoma case law contains clear reference to exemptions from article 5, Sec. 51 on the basis of police power needed for the public interest, see Public Serv. Co. v. Caddo Elec. Coop., 479 P.2d 572, 577, 581 (Okla.1971), and on the basis of status as a state "agency," see In re Oklahoma Turnpike Auth., 203 Okl. 335, 221 P.2d 795, 807 (1950); Okla. Att'y Gen. Op. No. 81-165 (1981). Article 5, Sec. 51 "was intended to preserve equality between citizens ... who are similarly situated." Kimery v. Public Serv. Co., 622 P.2d 1066, 1071 (Okla.1980) (citation omitted)