**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 95-40048

NORTH ALAMO WATER
SUPPLY CORPORATION,

Plaintiff-Appellee;

versus

CITY OF SAN JUAN,

Defendant-Appellant.

-------------------------

TEXAS RURAL WATER ASSOCIATION,

Amicus Curiae

Appeals from the United States District Court
For The Southern District of Texas
(93-CV-265)

April 15, 1996

Before KING, WIENER, and BENAVIDES, Circuit Judges:

PER CURIAM*:

This appeal involves a battle between Plaintiff-Appellee North Alamo Water Supply Company (Utility) and the Defendant-Appellant city of San Juan, Texas (City) over which one has the right to provide water service to five residential subdivisions (disputed areas) in or near the City. After the City began providing water service to the disputed areas, the Utility filed this suit, claiming that it had the exclusive right to provide water service to the disputed areas. The district court held in favor of the Utility and enjoined the City. The City appealed complaining, inter alia, that the district court's injunction is improper, vague, and offends both the Constitution and principles of federalism. We affirm in part and remand in part for modification of the injunction consistent with this opinion.

I

FACTS AND PROCEEDINGS

A. BACKGROUND

The Utility is a Texas nonprofit rural water supply company. Approximately 20 years ago, the Texas Water Commission, which has since been succeeded by the Texas Natural Resources Conservation Commission (Commission),[1] granted Certificate of Convenience and

---

* Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

[1] The Commission has rule making authority to regulate and supervise retail public utilities' rates, fees, operations, and services.

Necessity Number 10553 (Certificate) to the Utility. The Certificate obligates the Utility to provide water services for a large rural area spanning Hidalgo and Willacy counties in South Texas (Certificated Area).[2] To finance construction, operation, and improvement of its water system, the Utility obtained loans and grants from the Farmer's Home Association (FmHA). At the end of 1993, the Utility owed the FmHA approximately $12,000,000.

The City is a home rule municipality located in Hidalgo County, Texas. It owns and operates a municipal water supply system and provides water service in several subdivisions north of the City, some of which lie within the Utility's Certificated Area. As the City developed, the Utility would determine from time to time that various subdivisions of the City that are within the Certificated Area would be better served by the City. In such instances, the Utility would either execute a written release to the City or acquiesce in the City's furnishing water service to those subdivisions. The five other subdivisions[3] which collectively constitute the disputed areas are within the Certificated Area and are currently receiving water service from the City, but the City had never obtained a release from the Utility to service these subdivisions. The Utility objected to the

---

[2] See Tex. Water Code Ann. 13.250(a) (Vernon 1988 & Supp. 1995)("[A]ny retail public utility that possesses a . . . certificate of public convenience and necessity shall serve every consumer within its certificated area and shall render continuous and adequate service within the area or areas.")(emphasis added).

[3] The names of these subdivisions are Loma Linda 1, Loma Linda 2, Los Arboles, B&H Mobile Home Park, and Chaparreles.

3

City's providing service to the disputed areas, explaining that these subdivisions are within the Certificated Area and are adjacent to the Utility's water service lines. Despite these objections, the City refused to allow the Utility to provide water service to the disputed areas.

B.   THE LITIGATION

In December 1993, the Utility brought this action under 7 U.S.C. § 1926(b) to enjoin the City from providing water service within the Certificated Area. In July 1994, the City filed applications (Applications) under §§ 13.254[4] and 13.255,[5] seeking to decertify portions of the Certificated Area and to recertify them in the City's name. On August 18, 1994, before the Commission reached a decision on the Applications, the district court entered an Agreed Preliminary Injunction, enjoining the City from servicing any additional customers within the Certificated Area and ordering the City to contact the Commission and request that it take no further action on the Applications until the expiration of the Agreed Preliminary Injunction.[6]

1.   *Original Judgment*

---

[4] Tex. Water Code Ann. § 13.254 ("The commissioner at any time after notice and hearing may revoke or amend any certification of public convenience and necessity . . . if it finds that the certificate holder has never provided, is no longer providing, or has failed to provide continuous and adequate service in the area, or part of the area, covered by the certificate.").

[5] Id. § 13.255 (addressing single certification in an annexed or incorporated area).

[6] This preliminary injunction has not been challenged in this appeal.

4

On December 15, 1994, the district court entered final judgment (Original Judgment) in favor of the Utility and against the City. After noting that under Texas law the Utility had a legal duty to provide continuous and adequate service to residents in the Certificated Area, the district court held that the Utility had, as a matter of law, "made service available" as required by § 1926(b). In the alternative, the district court held that because the Utility had water service lines adjacent to the disputed areas, it had, as a factual matter, "made service available" as required by § 1926(b). The district court concluded that the City had encroached on the service area of a federally indebted water association and thus violated § 1926(b).

The district court found that the Utility's annual net revenue attributable to the disputed areas was approximately $365,000. Accordingly, it permanently enjoined the City from (1) pursuing the Applications; (2) offering to provide or providing service to the disputed areas; and (3) offering to provide or providing water service to areas that lie within the Certified Area but are not currently served by the City, except as agreed to by the Utility. Finally, the court also instructed that the transition of service from the City to the Utility within the disputed areas be accomplished so as to minimize interruption in water service.

2.  *Amended Judgment*

On December 27, 1994, the City filed a motion for a new trial and a motion to alter or amend the judgment (City's Motions). On December 28, 1994, the Utility filed what it "captioned" as a

motion for leave to amend its complaint (Utility's Motion). On January 27, 1995, the court overruled the City's Motions, but took the Utility's Motion under advisement. In May 1995, the district court issued an order which construed the Utility's Motion as a Rule 59(e) motion to amend or alter the judgment and granted it (Amended Judgment).

The Amended Judgement granted the same relief as the Original Judgment. In addition, it clarified that the City must relinquish to the Utility control of the water distribution infrastructures in the disputed areas. On May 5, 1995, the City filed its amended notice of appeal, challenging, inter alia, the district court's findings of fact, its legal conclusions, and the remedy it fashioned.

C.    THE COMMISSION AGREES WITH THE DISTRICT COURT

On May 30, 1995, the Commission issued a Cease and Desist Order (Commission's Order) at the request of the Utility. The Texas Commission ruled that, as the disputed areas are within the Certificated Area, the Utility had the exclusive right to provide water in the disputed areas. As a result, the Commission's Order directed (1) the Utility to provide "continuous and adequate" service to the disputed areas; (2) the City to continue providing water service to the disputed areas until the Utility initiates service; and (3) the City to cease providing water service to the disputed areas upon initiation of service by the Utility. The Commission declined to order the City to relinquish control of the water distribution infrastructures to the Utility, explaining that

6

it did not have the power to do so. As a final instruction, the Commission ordered the City and the Utility to "mend their fences," by filing applications to reflect the official boundaries of their respective certificated areas.

## II

## DISCUSSION

A. THE VIOLATION ISSUES:

1. *Standard of Review*

We review a judgment on the merits of a nonjury civil case applying the usual standards of review.[7] Thus, we review conclusions of law de novo and findings of fact for clear error.[8] If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse even if we are convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently.[9]

2. *The Statute: 7 U.S.C. § 1926(b)*

The initial issue in this appeal centers around Section 1926(b).[10] That section provides in pertinent part:

> The service provided or made available through any such [indebted water] association shall not be curtailed or limited by the inclusion of the area within the boundaries of any municipal corporation or other public

---

[7] See Crisis Transp. Co. v. M/V Erlangen Express, 794 F.2d 185, 187 n.5 (5th Cir. 1986).

[8] See id.

[9] See First United Fin. Corp. v. Specialty Oil Co., Inc., 5 F.3d 944, 947 (5th Cir. 1993) (citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985)).

[10] 7 U.S.C. § 1926(b).

body, or <u>by the granting of any private franchise for similar service within such area during the term of said loan</u> . . . .[11]

The service area of a federally indebted water association is sacrosanct. Every federal court to have interpreted § 1926(b) has concluded that the statute should be liberally interpreted to protect FmHA-indebted rural water associations from municipal encroachment.[12]

In <u>City of Madison, Miss. v. Bear Creek Water Ass'n Inc.</u>,[13] we held that § 1926(b) "indicates a congressional mandate that local governments not encroach upon the services provided by such [water] associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means." We explained that the history behind this section indicates two congressional purposes: (1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and (2) to safeguard the viability and financial security of such associations (and

---

[11] <u>Id.</u> (emphasis added).

[12] <u>Wayne v. Of Sebring</u>, 36 F.3d 517, 527-28 (6th Cir. 1994), <u>cert. denied</u>, 115 S.Ct. 2000 (1995); <u>Jennings Water, Inc. v. City of North Vernon, Ind.</u>, 895 F.2d 311, 315 (7th Cir. 1989); <u>Glenpool Util. Auth. v. Creek County Rural Water Dist. No. 2</u>, 861 F.2d 1211, 1214 (10th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1067 (1989); <u>City of Madison, Miss. v. Bear Creek Water Ass'n., Inc.</u>, 816 F.2d 1057, 1059 (5th Cir. 1987); <u>North Shelby Water Co. v. Shelbyville Mun. Water & Sewer Comm'n</u>, 803 F.Supp. 15, 21 (E.D. Ky. 1992); <u>Pinehurst Enter., Inc. v. Town of Southern Pines</u>, 690 F.Supp. 444, 451 (M.D.N.C.1988), <u>aff'd</u>, 887 F.2d 1080 (4th Cir. 1989); <u>Moore Bayou Water Ass'n., Inc. v. Town of Jonestown, Miss.</u>, 628 F.Supp. 1367, 1369 (M.D.Miss. 1986); <u>Rural Dist. No. 3 v. Owasso Util. Auth.</u>, 530 F.Supp. 818, 824 (M.D.Okla. 1979).

[13] 816 F.2d at 1060-61.

FmHA's loans) by protecting them from the expansion of nearby cities and towns. With this background, we turn to the violation issue.[14]

3.  *Did the City Violate § 1926(b)?*

To secure the protections of § 1926(b) the Utility must establish that (1) it has a continuing indebtedness to the FmHA, and (2) the City has encroached on an area to which the Utility "made service available."[15] As of the end of 1993, the Utility owed the FmHA approximately $12,000,000. The City does not contest that the first, "indebtedness" element is satisfied. Instead, it contends that the Utility failed to establish the second, "made service available" element. We disagree.

Under Texas law, the Certificate gives the Utility the exclusive right to serve the area within its CCN and obligates it "to serve every consumer within its certified area and . . . render continuous and adequate service within the area or areas."[16] We hold that the Utility's state law duty to provide service is the legal equivalent to the Utility's "making service available" under §1926(b).[17] When confronted with a similar issue, other courts have

_____

[14] Id. at 1060 (citing S.Rep. No. 566, 87th Cong., 1st Sess., reprinted in 1961 U.S. Code Cong. & Admin. News 2243, 2309).

[15] See 7 U.S.C. § 1926(b); see also City of Madison 816 F.2d at 1059; Glenpool, 861 F.2d at 1214.

[16] See Tex. Water Code Ann. § 13.001(b)(1),(2) & § 13.250(a) (West 1988 & Supp. 1995); see also Commission's Order ("[The Utility] holds the CCN for the five [disputed] subdivisions . . . and has the legal right to solely serve those subdivisions.").

[17] See Tex. Water Code Ann. 13.250(a) (Vernon 1988 & Supp. 1995)("[A]ny retail public utility that possesses a . . .

9

reached the same result, holding that when state law obligates a utility to provide water service, that utility has, for the purposes of § 1926(b), "made service available."[18]

In the alternative, the district court found as a factual matter that the Utility had "made service available."[19] Specifically, the district court made three findings of fact relevant to this conclusion: (1) The Utility currently provides water service to subdivisions adjacent to the disputed areas; (2) the Utility has lines and adequate facilities to provide service to the disputed areas; (3) the Utility has not refused service to anyone who has requested service within the Certificated Area. These findings of fact are not clearly erroneous. Accordingly, on the strength of these alternative legal and factual determinations, we affirm the district court's conclusion that the Utility had "made services available" to the disputed areas. As a result, we also agree with the holding of the district court that the City violated § 1926(b).

4.  *Does § 1926(b) Violate the Tenth Amendment?*

Before turning to the issues of remedy, we pause to address the City's constitutional challenge to § 1926(b). For the first

---

certificate of public convenience and necessity <u>shall serve</u> every consumer within its certificated area and <u>shall render</u> continuous and adequate service within the area or areas.")(emphasis added).

[18] <u>Glenpool</u>, 861 F.2d at 1214 ("made service available" requirement satisfied if state law requires utility to provide service within a certified area).

[19] <u>North Shelby</u>,803 F.Supp. at 21 ("made service available" requirement satisfied when utility has water lines running throughout disputed areas).

10

time on appeal, the City insists that § 1926(b) represents an illegitimate exercise of the Congress' power under the Spending Clause.[20]  We will not consider an issue that a party fails to raise in the district court, absent extraordinary circumstances.[21]  Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it.[22]  Such extraordinary circumstances do not exist here.  As this court has previously addressed a similar constitutional challenge (and resolved it contrary to the City's position),[23] we follow our general forfeiture rule and decline to consider the issue.

B.    THE INJUNCTION ISSUES:

    1.    *Standard Of Review*

The panel reviews the district court's grant or denial of a permanent injunction for abuse of discretion.[24]  The district court

---

[20] Footnote 8 of the district court's opinion explicitly states, "[n]o Tenth Amendment argument has been made in the present case."

[21] Singleton v.  Wulff, 428 U.S. 106, 120 (1976); Thomas v. Capital Sec.  Services, 836 f.2d 866, 884 n.25 (5th Cir.  1988)(en banc).

[22] Verden v. C&B Boat Co., Inc., 860 F.2d 150, 155 (5th Cir. 1988).

[23] City of Madison, 816 F.2d at 1060 ("[W]e perceive no significant limitation on the city's powers by virtue of a statute enacted to protect FmHA's subsidy of rural water authorities."); see also Helvering v.  Davis, 301 U.S. 619 (1936)("When money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress, not the states.  So the concept be not arbitrary, the locality must yield").

[24] Peaches Entertainment Corp.  v.  Entertainment Repertoire Assoc., 62 F.3d 690, 693 (5th Cir. 1995).

abuses its discretion if it (1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief.[25]

2.   *Was Injunctive Relief Appropriate?*

The City urges that the district court's conclusions that the Utility would have suffered irreparable harm and had no adequate legal remedy  were "clearly erroneous."  The City asserts that the record contains no factual basis for such a conclusions.  We disagree.  The record reflects the following facts: (1) the Utility is indebted to the FmHA; (2) in the disputed areas the City has encroached on the Utility's service area; and, (3) as a result, the Utility would lose revenue exceeding $365,000 a year if the City's encroachment went unabated.  The district court held (and we have now affirmed) that, as a legal and factual matter, the Utility had "made service available" to the disputed areas.  In other words, unless the City is prevented from violating § 1926(b), the Utility will lose $365,000 in annual revenue.

Section 1926(b) does not create or specify a remedy for the enforcement of violations, but an injunction has been the principle tool employed by the courts with which to enforce the statute and prevent violations.[26] Given these circumstances, we hold that the

---

[25] Id.

[26] See, e.g., City of Madison, 816 F.2d at 1059 (enjoining a city from annexing subdivisions within a utility's certificated area after finding violation of § 1926(b)); see also Jennings

12

record contains ample evidence to support the injunction.[27]

3. *Is The Injunction Sufficiently Specific?*

Next, the City complains that the district court's judgment fails to satisfy the requirements of Rule 65(d).[28]  In the form of a laundry list of specious quibbles and rhetorical questions, the City urges that the injunction is vague, unclear, and imprecise. We find that none of these flaws to be present.  The injunction is sufficiently and reasonably detailed and specific to permit the transfer of water service from the City to the Utility.

_____

*Water*, 895 F.2d at 315 (a violation of §1926(b) provided sufficient basis for the issuance of an injunction).

[27] The district court's injunction has forbidden the City to provide or offer to provide water service within the entire Certificated Area.  This injunction, albeit broad, does not constitute an abuse of discretion.  The Utility, by virtue of its indebtedness to the FmHA and state law duty to provide "continuous and adequate" service to the Certificated Area, Tex. Water Code Ann. 13.250(a), has satisfied the requirements of § 1926(b) with respect to the entire Certificated Area.  Thus, § 1926(b) protects the entire Certificated Area from encroachment by the City.
    Nevertheless, it would have been more prudent to limit the injunction to the disputed areas, the particular portion of the Utility's service area at the heart of this litigation.  As the Commission was not a party to this litigation, we assume the district court intended this injunction to apply only to these parties and not to limit the Commissions' power to regulate or redraw the Certificated Area.  Such an injunction, purporting to control the actions of the Commission, a state regulatory body, would create a considerably more difficult federalism question: Namely, does § 1926(b) also preclude a state regulatory agency from modifying the service area of a federally indebted utility.  But, we leave that issue for another day.

[28] Rule 65(d) provides in pertinent part as follows:

    Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . .

13

Transferring water service from the City to the Utility will be a relatively complicated logistical task, requiring a coordinated effort by both parties. The burdens of any disruption in service will fall more heavily on the residents than on the parties. With an eye on these potential pitfalls, the district court instructed the City to continue uninterrupted water service until the Utility is prepared to commence service, then to cease providing water service immediately upon commencement of service by the Utility. Although this order does not choreograph every step, leap, turn, and bow of the transition ballet, it specifies the end results expected and allows the parties the flexibility to accomplish those results. Like the district court, we trust that, despite their differences regarding the right to service the disputed areas, the parties will work together to achieve a smooth transition with no interruption in water service and a minimum of inconvenience to the residents of the disputed areas.

   4.   *Was the Judgment Properly Amended?*

The City argues that the district court lacked jurisdiction to amend the Original Judgment and order the City to give the Utility control of the water distribution infrastructures in the disputed areas. First, the City argues that the district court's decision to construe the Motion as a Rule 59(e) motion was "clearly erroneous." Although the City cites no authority for this conclusional proposition, it seems to be arguing that, as a matter of law, a district court cannot construe a motion to amend the complaint as a Rule 59(e) motion. We have found no support for

14

this proposition.

As a general matter, the caption on a pleading does not constrain the court's treatment of a pleading. For example, Rule 8(f) instructs district courts to construe all pleadings so as to do substantial justice, while Rule 8(c) counsels that when a party mistakenly designates a defense as a counter-claim or vice-versa the court shall, if justice so requires, treat the pleading as though it had the proper designation.[29] Thus, the district court could construe the motion as a Rule 59(e) motion so long as the requirements of Rule 59(e) are met.

Rule 59(e) requires that a motion call into question the correctness of the judgment and be served within ten days after the entry of the judgment.[30] The City does not contest the first element, but attempts to obfuscate the second by arguing that the Utility failed to serve its motion within the ten day limitation period.[31] According to the district court's docket sheet, the Original Judgment was entered on December 15, 1994. The limitations period under Rule 59(e) is less than 11 days, so under Rule 6(a) the date on which the judgment was entered, weekends, and federal holidays are not counted "in computing the period of time prescribed or allowed by these rules."[32] Under this computation

---

[29] See Fed.R.Civ.P. 8.

[30] See Fed.R.Civ.P. 59(e).

[31] See id. ("A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.").

[32] See Fed.R.Civ.P. 6(a).

15

method, the Utility had from December 15, 1994 until December 30, 1994 to serve a Rule 59(e) motion.[33]  As the City avers that it received a copy of the motion on December 29, 1994, the motion was timely under Rule 59(e).  Accordingly, we hold that there was no legal impediment to construing the Utility's Motion as a Rule 59(e) motion and that the motion was timely under Rule 59(e).

    5.    *The Water Distribution Infrastructures*

The City argues that the district court abused its discretion when it ordered the City to relinquish the water service infrastructures to the Utility because the relief was unrequested and if granted would prejudiced the City.  Citing International Harvester Credit Corp. v. East Coast Truck,[34] the City insists that when the failure to demand the relief granted prejudices the opposing party, the district court abuses its discretion.

We conclude that in ordering the transfer of the infrastructures to the Utility, the district court did not abuse its discretion.  Rule 54(c) vests district courts with broad discretion to fashion a remedy, even if the remedy awarded is not specifically requested in the prayer for relief.[35]  Although we recognize that Harvester places some limits on the district court's

---

[33] Four weekend days and the Christmas holiday account for the extra five days.

[34]  547 F.2d 888, 891 (5th Cir. 1977).

[35] Fed.R.Civ.P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."); see also International Harvester, 547 F.2d at 891.

16

discretion, those limits are modest indeed and clearly were not exceeded here. The law gives the Utility the exclusive right to provide water service to and within the disputed areas. We are under the impression that the developers of the subdivisions installed the infrastructures and ceded them to the City without charge. The infrastructures are indispensable to providing water service to the residents of the subdivisions now that the development is complete. Thus, unless the infrastructures are transferred, the Utility would not be able to provide efficient and economical water service, and the rights of the Utility that are validated here would be useless.

We are, however, concerned that the City may not receive just and adequate compensation for those items comprising the infrastructures, if any, that the City may have furnished. We have been unable to determine precisely how the City obtained the infrastructures or any portions thereof other than a suggestion that they received them gratuitously from the developers.[36] Thus,

_____

[36] We do not know from the record or the briefs of the parties by what means or for what prices, the City came into possession of the infrastructures in the disputed areas. In Public Utility Comm'n of Tx. v. Southwest Water Serv., Inc., 636 S.W.2d 262, 263 n.1 (Tex.Ct.App.--Austin 1982, writ ref'd n.r.e.), the practices of the Texas water and sewer utility industry were described as follows:

> Water and sewer utilities serving suburban or rural areas acquire their facilities, particularly the water and sewer pipe mains and their connections to individual houses or businesses, from the developer of a subdivision. The developer will normally incur the original cost of installing the pipe and setting up the system. More often than not, the developer will recoup the cost of installation of the system when he sells houses in the subdivision. For federal income tax

17

we remand only this sub-issue to the district court for it to determine (1) whether the City paid for the infrastructures or any portions thereof, and (2) if so, the amount of just and adequate compensation that should be paid to the City for its reasonable costs and expenses in that regard.

6.   *Are The Applications Preempted by § 1926(b)?*

The district court enjoined the City from pursuing the Applications with the Commission.  The City argues that this aspect of the district court's injunction impermissibly interferes with the legitimate exercise of the State of Texas' regulatory powers. Amicus Texas Rural Water Association urges that the district court's injunction would be impermissible only if it functioned as a limitation or prohibition of the power of the State of Texas to

---

purposes, the developer is also allowed to deduct the cost of the system from the income he receives from the sale of the lots or houses.  The developer will then sell or donate the in-place water and sewer system to a newly created utility company. Often, this utility company will be one of several affiliate companies owned by the developer or the development company. Later, when the utility company is operating and seeks to increase the rates it charges its customers, the company will seek to include this property in its rate base as invested capital. Of course, inclusion of this property in the rate base will expand the rate base and increase the amount of return on the invested capital the utility is entitled to receive in the form of increased rates. Customers of the utility often complain that they are charged twice for the same property-once when they buy the house or lot (and the developer has computed the cost of the system into the purchase price) and second when the utility is allowed an increased return on invested capital because the property is included in the rate base.

Be that as it may, we do not know which if any of these generalizations apply in this case.

18

enforce the minimum requirements for the protection of public health and safety. We hold that these issues were rendered moot by the Commission's Order.

As discussed above, § 1926(b) grants broad protection to federally indebted utilities. In this case, we need not probe the outer limits of that grant. Instead, we decide only the issues presented in this appeal: (1) whether the City, by providing water service to the disputed areas, has violated § 1926(b); and (2) if so, what is the appropriate remedy in response to that particular violation. The district court held, as both a factual and legal matter, that the Utility has the exclusive right to provide water service to the disputed areas. The Commission, in a ruling congruent with that of the district court, declared that the Utility had the exclusive right to provide water service to the disputed areas. With that order, the Applications--which sought a ruling from the Commission that the Utility did not have the exclusive right to provide water service to the disputed areas-- became moot. Accordingly, we need not address that issue here.

III

CONCLUSION

We affirm the district court's judgment that the City violated § 1926(b). We also affirm that court's injunction except as to that part which omits a determination of possible repayment of costs and expenses, if any, incurred by the City in acquiring or improving the infrastructures. In that limited respect only, we remand for the district court to consider and, if necessary, to modify its injunction consistent with this opinion.

AFFIRMED, in part, and REMANDED, in part.