**RURAL WATER SEWER AND SOLID WASTE MANAGEMENT, District No. 1, Logan County, Oklahoma, an agency and legally constituted authority of the State of Oklahoma, Plaintiff–Counter–Defendant–Appellee,**

v.

**CITY OF GUTHRIE, an Oklahoma Municipality; The Guthrie Public Works Authority, a public trust, Defendants–Counterclaimants–Third–Party Plaintiffs–Appellants,**

v.

**Department of Agriculture, Third–Party–Defendants–Appellees**

**and**

**Community Program Loan Trust 1987A, a Massachusetts Business Trust, Third–Party–Defendants.**

Nos. 08–6003, 08–6066.

United States Court of Appeals, Tenth Circuit.

Aug. 24, 2009.

James C. Milton (Courtney Bru, with him on the briefs) Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Defendants–Appellants City of Guthrie and The Guthrie Public Works Authority.

Michael D. Davis (Steven M. Harris, with him on the brief) Doyle Harris Davis & Haughey, Tulsa, Oklahoma, for Plaintiff–Appellee Rural Water, Sewer and Solid Waste Management District No. 1.

Steven K. Mullins (John C. Richter, United States Attorney & Kay Sewell, Assistant United States Attorney, with him on the brief) United States Attorney's Office, Oklahoma City, Oklahoma, for Third–Party Defendant–Appellee Department of Agriculture.

Before McCONNELL, EBEL and GORSUCH, Circuit Judges.

## CERTIFICATION OF QUESTIONS OF STATE LAW

EBEL, Circuit Judge.

Pursuant to 10th Cir. R. 27.1 and Okla. Stat tit. 20, § 1602, the United States Court of Appeals for the Tenth Circuit requests that the Oklahoma Supreme Court exercise its discretion to consider several certified questions of Oklahoma law which "may be determinative of an issue" in these appeals currently pending before this court and on which "there is no controlling" Oklahoma law. Okla. Stat. tit. 20, § 1602.

### I. FACTS

In 1972, the Logan County, Oklahoma, Board of Commissioners, acting pursuant to state law, created Plaintiff–Appellee Ru-

ral Water, Sewer and Solid Waste Management District No. 1 ("Logan–1") as "a non-profit association" that would provide water to rural Logan County, except for the area of the county located within the city limits of Guthrie, Oklahoma, as those limits existed at that time. Defendants–Appellants City of Guthrie, Oklahoma, and its Guthrie Public Works Authority (collectively "Guthrie"), already provided water service to the City itself.

Beginning in 1976, Logan–1 obtained several loans from the United States Department of Agriculture ("USDA"). These loans were part of a program established in 1961, when "Congress amended the Consolidated Farm and Rural Development ment Act, 7 U.S.C. §§ 1921–2009n, to allow nonprofit water associations to borrow federal funds for 'the conservation, development, use, and control of water . . . primarily serving . . . rural residents.'" *Moongate Water Co. v. Dona Ana Mutual Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1084 (10th Cir.2005) ("*Moongate Water*") (quoting 7 U.S.C. § 1926(a)(1)).[1] Logan–1 obtained a total of five of these loans, two in 1976, and one each in 1978, 1982 and 2003.[2]

Sometime in 2003, a land developer approached Guthrie, seeking water service for his planned development, the Pleasant Hills Apartments. No one disputes that this development is located within the geographic territory that the Logan County Commissioners assigned to Logan–1 in 1972. Nonetheless, it was Guthrie that extended its water system in order to provide Pleasant Hills with water service.

As a result, Logan–1 sued Guthrie, in July 2005, claiming that Guthrie had unlawfully encroached on Logan–1's service area, which was protected from competition by 7 U.S.C. § 1926(b) and the terms of its loan agreements which had been authorized by the Oklahoma legislature.[3] Section 1926(b) protects any rural water district that remains indebted on loans obtained from the USDA from competition from other water districts "within the borrowing entity's service area." *Doña Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*, 516 F.3d 900, 902–03 (10th Cir.2008) ("*Doña Ana*"). Section 1926(b) specifically provides:

> The service provided or made available through any [indebted rural water] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit

1. Originally the Farmers Home Administration ("FmHA") administered these loans. *See Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 701 (10th Cir.2004) ("*Pittsburg County*"). Since 1994, however, the Department of Agriculture has operated this loan program, *see id.* at 701 n. 1, through its Rural Utilities Service. *See Rural Water Dist. No. 1. Ellsworth County v. City of Wilson*, 243 F.3d 1263, 1269 n. 3 (10th Cir.2001) (citing 7 C.F.R. § 1780.3).

2. In 1987, the USDA sold the first four of these loans to Community Program Loan Trust 1987A, a special purpose Massachusetts business trust. That fact, however, does not affect the questions we certify here to the Oklahoma Supreme Court. *See Moongate Water Co. v. Butterfield Park Mut. Domestic Water Ass'n*, 291 F.3d 1262, 1265–67 (10th Cir.2002) (holding transfer of USDA loans to private lenders did not extinguish a rural water ter district's indebted on those loans for purposes of § 1926(b)); *see also Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1198 (10th Cir.1999).

3. Oklahoma Stat. tit. 82, § 1324.10(A)(4).

as a condition to continuing to serve the area served by the association at the time of the occurrence of such event. 7 U.S.C. § 1926(b).

Section 1926(b)'s protection serves two goals. *See Pittsburg County*, 358 F.3d at 715. First, it provides "greater security for the federal loans made under the program." *Id.* (quotation omitted).

> By protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system, § 1926 protects the financial interests of the United States, which is a secured creditor of the water association, from reduction of the water association's revenue base.

*Id.* (quotation, citation omitted). "The second interest" served by § 1926(b)'s protection from competition "is the promotion of rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost." *Id.* (quotation omitted).

"[T]o receive the protection against competition provided by § 1926(b) a water association must (1) have a continuing indebtedness [under loans obtained from] the federal government, and (2) have provided or made available service to the disputed area." *Moongate Water*, 420 F.3d

at 1084 (quotation, alteration omitted). Thus, this court has held that a water district's service area protected from competition under 7 U.S.C. § 1926(b) is *not* necessarily the entire geographic area granted to the district under state law, but is instead the area 1) for which the water district has a right, under state law, to provide service and 2) has actually done so, or could do so in reasonable time. *See Sequoyah County*, 191 F.3d at 1201–03.

In addition to these principles defining the protection § 1926(b) affords rural water districts from competition, state law cannot change the service area to which the protection applies, *after* that federal protection has attached. *See Pittsburg County*, 358 F.3d at 715. For instance, "where the federal § 1926 protections have attached, § 1926 preempts local or state law that can be used to justify a municipality's encroachment upon disputed area in which an indebted association is legally providing service under state law." *Pittsburg County*, 358 F.3d at 715 (quotation, alteration omitted).

## II. SUMMARY OF LEGAL DISPUTE

In the appeals pending before this court, Logan–1 contends that it has authority, under Okla. Stat. tit. 82, § 1324.10(A)(4), to enter into loan agreements with the USDA that include § 1926(b)'s protection from competition,[4] and that, having done so, it is entitled here to claim that

---

4. Oklahoma Stat. tit. 82, § 1324.10(A)(4) provides:

> Every district incorporated hereunder ... shall have power to:
>
> . . . .
>
> (4) Borrow money and otherwise contract indebtedness for the purposes set forth in this act, and, without limitation of the generality of the foregoing, to borrow money and accept grants from the United States of America, or from any corporation or agency created or designated by the United States of America,

and, in connection with such loan or grant, *to enter into such agreements as the United States of America or such corporation or agency may require:* and to issue its notes or obligations therefor, and to secure the payment thereof by mortgage, pledge or deed or trust on all or any property, assets, franchises, rights, privileges, licenses, rights-of-way, easements, revenues, or income of the said district.

Okla. Stat. tit. 82, § 1324.10(A) (emphasis added) (footnote omitted).

§ 1926(b) protects its right to serve Pleasant Hills from competition from Guthrie.

Guthrie does not appear to dispute that Okla. Stat. tit. 82, § 1324.10(A)(4) authorizes Logan–1 generally to obtain federal loans, but Guthrie argues that, because Logan–1's USDA loans include the § 1926(b) protection from competition, those loans are contrary to the Oklahoma Constitution, which provides that "[t]he Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State." Okla. Const. art., 5, § 51. Although Guthrie phrases this argument in several different ways, Guthrie's contention is that the Oklahoma legislature's enactment of Okla. Stat. tit. 82, § 1324.10 violates Okla. Const. art. 5, § 51 to the extent that § 1324.10(A)(4) authorizes Logan–1 to enter into loans with the USDA that must, as a matter of federal law, contain the protection against competition afforded rural water districts under 7 U.S.C. § 1926(b).

The parties point to three cases, two from Oklahoma and one from this court, that they contend are particularly relevant to this issue. Guthrie relies upon *Comanche County Rural Water District No. 1 v. City of Lawton*, 501 P.2d 490 (Okla. 1972), and *Rural Water & Sewer District No. 4 v. Coppage*, 47 P.3d 872 (Okla.2002), to support its argument that Logan–1 lacks state-law authority to enter into loan agreements with the USDA that include the § 1926(b) protection from competition. *Comanche County* and *Coppage* both appear to indicate that if the Oklahoma legislature granted a water district an "exclusive franchise," that would violate Okla. Const. art. 5, § 51. *See Coppage*, 47 P.3d at 875–76; *Comanche County*, 501 P.2d at 492–93.

 The issue presented in this case is whether the Oklahoma Constitution prohibits Logan–1 from claiming an exclusive right to serve a prospective, but not current, customer located within its assigned service area provided that Logan–1 has the legal right and present ability to provide water service to such a prospective customer. On this issue, Logan–1 argues the Oklahoma Constitution does not prevent it from asserting such an exclusive right under § 1926(b), and Guthrie argues that the Oklahoma Constitution does prohibit Logan–1 from asserting such an exclusive right under § 1926(b).

Logan–1, in arguing that its claimed § 1926(b) protection is not contrary to Okla. Const. art. 5, § 51, relies upon *Glenpool Utility Services Authority v. Creek County Rural Water District No. 2*, 861 F.2d 1211 (10th Cir.1988), which this court decided after *Comanche County*, but before *Coppage*. *Glenpool* held that the § 1926(b) protection Logan–1 claims did not violate Oklahoma Constitution, art. 5, § 51, because 1) any exclusive right that stems from § 1926(b) comes from Congress, and not the Oklahoma legislature; 2) the § 1926(b) protection should be viewed as a contract condition and a security provision rather than an exclusive franchise granted by the state; and 3) any such right that Congress granted is only temporary, rather than permanent, because it is contingent on the continuing existence of a federal debt owed by the protected water district, which the district or the State of Oklahoma could pay off whenever it wishes. *See Glenpool*, 861 F.2d at 1216.

In addition to this argument, Logan–1 offers an alternative argument in support of its claimed § 1926(b) protection from competition. Logan–1 asserts that, even if its loans incorporating the § 1926(b) protection are contrary to Okla. Const. art. 5, § 51, Oklahoma recognizes exceptions to that state constitutional prohibition that would apply in this case. In *Glenpool*, for instance, this court noted that "Oklahoma

case law contains clear reference to exemptions from article 5, § 51 on the basis of police power needed for the public interest, and on the basis of status as a state 'agency.'" 861 F.2d at 1216 n. 2 (citations omitted); *see also Kimery v. Pub. Serv. Co. of Okla.*, 622 P.2d 1066, 1071 (Okla. 1980) (holding, in applying Okla. Const. art. 5, § 51, that "[w]here a statute touches upon the public health and welfare, the statute cannot be deemed unconstitutional class legislation, even though a specific class of persons or businesses is singled out, where the legislation in its impact is free of caprice and discrimination and is rationally related to the public good"); *Estate of Cabelka ex rel. Cabelka v. Comanche County Hosp.*, 87 P.3d 1101, 1103 (Okla.Civ.App.2003) (noting suggestion that extending governmental immunity to private or non-public entities would implicate Okla. Const. art. 5, § 51's prohibition against the legislature granting exclusive rights, privileges or immunities).

Logan–1 invokes these exemptions, and specifically points to the Oklahoma Supreme Court's decision in *Public Service Company of Oklahoma v. Caddo Elec. Coop.*, 479 P.2d 572 (Okla.1970) ("*Caddo*"), as support for its assertion of a police power or public safety exemption to Okla. Const. art. 5, § 51. *Caddo* addressed a state law that provided a rural electric utility protection from competition much like the protection afforded by § 1926(b). *See Caddo*, 479 P.2d at 575. The Oklahoma Supreme Court held that state-law protection did not violate Okla. Const. art. 5, § 51's prohibition against exclusive franchises because it was a "proper exercise of police power" aimed at promoting rural electric service while avoiding the wasteful duplication of such services. *See Caddo*, 479 P.2d at 577–81.

## III. QUESTIONS

Although we recognize our obligation to interpret and apply federal law independently, the parties' arguments presented in these appeals also require us to apply Oklahoma law. And we are obligated to apply Oklahoma law as decided by the Oklahoma Supreme Court. It is the interpretation of Oklahoma law about which we request guidance here. Therefore, based upon the legal dispute described above, we certify to the Oklahoma Supreme Court the following questions:

1. Whether Okla. Const. art. 5, § 51 precludes Logan–1 from either entering into loan agreements with the USDA that include 7 U.S.C. § 1926(b)'s protection from competition, or enforcing its claimed § 1926(b) protection against other Oklahoma water districts?

2. If either is so, whether there is a police power or public safety exception to the Oklahoma Constitution, art. 5, § 51's prohibition against exclusive rights, privileges or immunities that would, nevertheless, validate Logan–1's loan agreements with the USDA that include the § 1926(b) protection from competition in this case involving provision of a rural public water service?

## IV. PROCEDURAL ORDERS IMPLEMENTING CERTIFICATION

We appreciate the Oklahoma Supreme Court's consideration of these certified questions of Oklahoma law. And we recognize that, if the Oklahoma Supreme Court accepts these certified questions, it may, "[p]ursuant to Okla. Stat. tit., 20, §§ 1602.1 and 1604(A)(3), ... reformulate th[ese] question[s] of law." *Pino v. United States*, 507 F.3d 1233, 1238 (10th Cir. 2007).

We direct the clerk of this court to transmit a copy of this certification order to the parties and to forward a copy of this order, together with the parties' briefs (which also display the names and addresses of counsel of record, *see* Okla. Stat. tit. 20, § 1604(A)(4)), to the Okla-

homa Supreme Court pursuant to Okla. Stat. tit. 20, § 1603.1.

*Pino,* 507 F.3d at 1238. We also direct the clerk of this court to transmit a copy of this certification order to the Clerk of the United States District Court for the Western District of Oklahoma, attention case No. 05–cv–0078–R, *See Ball v. Wilshire Ins. Co.,* 498 F.3d 1084, 1086 (10th Cir. 2007). "The treatment of any costs associated with the certification proceedings should be as prescribed by . . . Okla. Stat. tit. 20, § 1606." *Randall v. Travelers Cas. & Sur. Co.,* 450 F.3d 1115, 1117 (10th Cir.2006).

Pursuant to Tenth Circuit R. 27.1(A), we stay these appeals pending the Oklahoma Supreme Court's consideration of this certification request and, if the request is accepted, the Oklahoma Supreme Court's resolution of these certified questions. *See Ball,* 498 F.3d at 1086; *Randall,* 450 F.3d at 1117.