**RURAL WATER DISTRICT NO. 1, ELLSWORTH COUNTY, KANSAS, commonly known as Post Rock Rural Water District, a/k/a Ellsworth County Rural Water District No. 1, Plaintiff,**

v.

**CITY OF ELLSWORTH, Kansas, Defendant.**

**Civil Action No. 96–1295–FGT.**

United States District Court, D. Kansas.

Oct. 14, 1997.

Royce E. Wallace, Wichita, KS, William S. Woolley, Patterson, VanZandt, Powell, Wool-

ley & Harris, L.C., Wichita, KS, Victor S. Nelson, Wichita, KS, for Plaintiff.

Wyatt A. Hoch, Foulston & Siefkin, L.L.P., Wichita, KS, for Defendant.

### OPINION AND ORDER

THEIS, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. (Doc. 40). Plaintiff seeks to prevent the defendant from supplying domestic water to the new Ellsworth County Hospital, which is currently under construction. An evidentiary hearing was held on this motion on September 9, 1997, at the conclusion of which the court gave the parties until September 19, 1997, to submit any proposed findings of fact and conclusions of law. The court has considered the evidence presented at the hearing, the relevant law and the submissions of the parties and is prepared to rule.

### FINDINGS OF FACT

1. Rural Water District No. 1, Ellsworth County, Kansas ("Post Rock") is a duly organized and validly existing rural water district within the State of Kansas. Ellsworth ("City") is a municipal corporation validly formed and existing in the State of Kansas.

2. Post Rock was formed on March 5, 1979, by action of the Board of Commissioners of Ellsworth County, Kansas. Its boundaries include all of Ellsworth County except the City of Ellsworth as it existed on March 5, 1979.

3. Post Rock obtains raw water from Kanapolis Reservoir, treats the water to regulatory standards, and distributes the water to over 1,100 customers in its territory of over 2,200 square miles in north central Kansas. [Testimony of Leroy Charvat].

4. Post Rock is an "association" eligible to receive loans and grants from the United States Department of Agriculture Farmers Home Administration ("FmHA") and its successor, USDA Rural Development. 7 U.S.C. § 1926(a).[1]

---

1. For the sake of efficiency, the court will refer to both the Farmers Home Administration and its successor, the RDA, as "FmHA."

5. In order to help finance construction of its system, in the mid–1980's Post Rock borrowed $6,463,000.00 from FmHA. The indebtedness is evidenced by promissory notes dated November 28, 1984 and March 3, 1986, and secured by real estate mortgages dated October 3, 1985 and March 1, 1986. [Ex. 8]. Included in the property mortgaged is: .

(c) All right, title and interest of the Borrower in and to the water transmission and distribution system now owned, or to be acquired or constructed by the Borrower with the proceeds of the loan evidenced by the note described herein to serve consumers . . ., and in and to all extensions and improvements thereof and additions thereto, including all water mains, pipe lines, service lines, meters, meter boxes, fixtures, appliances, machinery and other equipment and any and all other property of every nature and description used or acquired for use by the Borrower in connection therewith.

6. Post Rock has remained continuously indebted to the FmHA and currently owes approximately $7,932,053.00 (unpaid principal and accrued interest). Post Rock has paid approximately $365,000 in principal. The FmHA funds were used to build Post Rock's treatment plant and most of its pipeline and storage systems. [Testimony of LeeRoy Charvat].

7. Ellsworth owns and operates its own groundwater wells and water treatment and distribution system. The city distribution system serves domestic and fire protection water to customers (i) within the 1979 city limits; (ii) within areas annexed into the City (without objection by Post Rock) since 1979; and (iii) outside the 1979 city limit that were connected before 1979. [Testimony of Dane Britton].

8. Ellsworth was not connected to the Post Rock distribution system as originally conceived and constructed. Prior to 1985 Ellsworth rejected numerous invitations to become a wholesale member of Post Rock. [Testimony of Dane Britton].

9. Post Rock again approached Ellsworth in 1985 about executing a bulk sale water contract. Post Rock offered to construct the necessary pipeline and to sell water to Ellsworth at a bulk (wholesale) rate in exchange for Ellsworth's agreement to take or pay for a set quantity of water per month, and to make fixed monthly payments for a forty year period. When Ellsworth refused to accept a "take or pay" contract provision, FmHA and Post Rock insisted that Ellsworth fund construction of the interconnecting pipeline.

10. Ellsworth viewed Post Rock as a back-up source of supply for current city water needs, and a supplemental source for anticipated growth in the community. Because the city would be incurring debt to construct the pipeline, the city council insisted on maintaining control over the pipeline to assure the city's contract rights and investment in the pipeline could not be impaired by other users.

11. In January 1987 Ellsworth and Post Rock executed a written water supply contract. [Ex. 3]. Post Rock agreed to furnish to the City up to 250,000 gallons of water per day. Ellsworth was not required to purchase any minimum amount of water. [Ex. 3, ¶ A.1].

12. In exchange, Ellsworth agreed to pay Post Rock the cost of constructing a new, 8″ diameter water pipeline running from Post Rock's tower approximately six miles northeast of Ellsworth, to an interconnection with the Ellsworth system at the northeast city limit ("the Ellsworth pipeline"). The contract obligates Ellsworth to assume a portion of Post Rock's debt, and to pay that debt in monthly payments of $1,620.88 for a forty year period. [Ex. 3, ¶ B.2]. Finally, Ellsworth agreed to pay Post Rock for water delivered at Post Rock's wholesale rate. [Ex. 3, ¶ B.3].

13. The Water Supply Contract provides that "Post Rock and the City shall own all pipeline and any meter equipment within its [Post Rock's] boundary lines up to the point of delivery to the City. . . . Upon payment of any debt which City might have incurred in construction of said line, the line within the District's [Post Rock's] boundaries will become property of the District." [Ex. 3, ¶ A.5].

14. The pipeline route parallels the west shoulder of U.S. Highway 156. The City

of Ellsworth obtained and paid for the pipeline easements along the route. [Ex. 20; Ex. B].

15. No Post Rock or FmHA loan funds were used to construct the Ellsworth pipeline. The Chairman of the Post Rock Board of Directors testified that the pipeline is not part of the collateral securing the FmHA notes, although it may become part of the collateral in the future when ownership of the pipeline reverts to Post Rock. [Testimony of LeeRoy Charvat].

16. The Ellsworth pipeline is the only line in the Post Rock district that is not owned exclusively by Post Rock. Furthermore, the easements for all other pipelines are owned exclusively by Post Rock. [Testimony of David Bailey].

17. Ellsworth County is currently building a new hospital immediately north of the Ellsworth city limit. The new hospital site is within the Post Rock boundary. The existing hospital is located within the city and is served with city water for domestic use and fire protection. [Testimony of LeeRoy Charvat].

18. The new Ellsworth County Hospital site is located on an undeveloped half section of land immediately north of the City of Ellsworth. The site is approximately 700 feet west of the Ellsworth pipeline, but only 100 feet north of a 10″ water pipeline owned by Ellsworth. [Ex. 7A].

19. The new hospital will require water service for domestic use, for internal fire sprinklers, and for outdoor fire hydrants. If allowed access to the 8″ transmission line, Post Rock would have the ability to meet the hospital's quantity and pressure requirements for domestic water, and perhaps for internal fire sprinklers. [Testimony of David Bailey, Michael Olson; Exhibits 14, 15, & 19]. It could not, however, satisfy the code requirements for outdoor fire hydrants. [Testimony of Michael Olson, P.E]. Therefore, the hospital must obtain water service from Ellsworth in order to meet its fire protection needs.[2]

20. The Ellsworth County Board of Commissioners and Hospital Board have voted to obtain from the City of Ellsworth all

domestic and fire protection water service required for the new hospital. [Testimony of Dane Britton].

21. The governing body of the City of Ellsworth, the city council, does not consent to Post Rock serving the hospital from the Ellsworth pipeline. The City will not grant Post Rock an easement to cross the City's thirty-foot easement with a pipeline connected to the Ellsworth pipeline. [Testimony of Dane Britton].

22. Post Rock has made a written offer to provide the new hospital with a district membership, as well as the necessary pipeline and metering equipment to supply domestic water, at no cost. In that offer, Post Rock indicated that it would consider selling water to the hospital at its wholesale rate. [Exhibit 5].

23. Once materials are available, a contractor is engaged, and easements are obtained, it would take Post Rock no more than three days to construct a pipeline to serve the new hospital. [Testimony of David Bailey].

24. If Post Rock must build a pipeline to the hospital after landscaping, parking lots, sidewalks and other site improvements are completed, the cost of the pipeline will be significantly higher than it is now. An easement across the alfalfa filed lying between the Ellsworth pipeline and the hospital site is available to plaintiff for construction of a pipeline to serve the hospital. [Testimony of David Bailey].

### CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1343 and § 1331. The court has jurisdiction of the parties. Venue is proper in this district. 28 U.S.C. § 1391(b).

2. A party seeking a preliminary injunction must establish (1) a substantial likelihood that it will prevail on the merits; (2) that it will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the moving party outweighs whatever damage the proposed injunction

---

**2.** Post Rock is not required to provide external fire protection water. Thus, its inability to do so

has no effect on its rights under § 1926(b).

will cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

3.  The function of a preliminary injunction is to preserve the status quo pending trial on the merits. *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 557 (10th Cir.1984); *Lundgrin*, 619 F.2d at 63.

4.  The grant or denial of a preliminary injunction lies within the sound discretion of the trial court. *Rainbow Snow*, 748 F.2d at 557.

*I.  Likelihood of Success on the Merits*

5.  7 U.S.C. § 1926 authorizes the Secretary of Agriculture, through the FmHA, to make or insure loans to "associations," including rural water development districts. § 1926(a)(1). It is undisputed that plaintiff is an association within the meaning of 7 U.S.C. § 1926, and that it is indebted to the FmHA.

6.  This case turns on the application of 7 U.S.C. § 1926(b), which provides:

    The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7.  Section 1926(b) serves two principal purposes: (1) it encourages rural water development by expanding the number of potential users, resulting in a lower cost per user; and (2) it safeguards the viability of associations and FmHA loans, protecting both from the expansion of nearby towns and cities. *Scioto County Reg. Water Dist. 1 v. Scioto Water Inc.*, 103 F.3d 38 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). The courts have held that § 1926(b) should be liberally interpreted to protect FmHA-indebted rural water associations from mu-nicipal encroachment. *North Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 915 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).

8.  Plaintiff contends it is protected under § 1926(b) and that the City of Ellsworth is prohibited from competing for the right to supply the new hospital with domestic water service.

9.  Defendant contends the plaintiff is not entitled to the protection of § 1926(b) for two reasons: (1) it does not have a right of access to the pipeline by which it seeks to supply the hospital with water; and (2) the construction costs for the pipeline were not paid with FmHA-loaned funds.

10.  A water district seeking the protection of § 1926(b) must establish (1) that it has a continuing indebtedness to the FmHA and (2) that the City has encroached on an area to which the association has "made service available." *North Alamo*, 90 F.3d at 915; *see also Glenpool Utility Services v. Creek County Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir.1988).

11.  Addressing the second element first, there is no dispute that defendant is "encroaching" by providing service to a customer within plaintiff's service area. Defendant argues, however, that plaintiff has not "made service available" to the new hospital site because it would have to use the Ellsworth pipeline to connect the hospital to its system. Defendant contends that although the pipeline is jointly owned, the City owns the easements to the pipeline and will not permit the plaintiff access for the purpose of supplying water to the hospital.

12.  The court rejects this argument. Although easements may be exclusive, there is no evidence that the City obtained exclusive easements. In fact, the only evidence on this point is that the City has not objected in the past when plaintiff has hooked up other customers to the Ellsworth pipeline. The evidence shows that adding a line to the hospital would not interfere with plaintiff's ability to provide water to the City under the existing con-

tract. Plaintiff has been able to obtain permission from the landowners to access the pipeline for the purpose of maintaining the pipe and hooking up other customers.

13. The evidence shows that Ellsworth County and the representatives of the new hospital would prefer water service from the City and that the City could provide water at a lower cost than could Post Rock. However, such information is immaterial to the court's inquiry under § 1926(b). The key question is whether plaintiff has made service available, not whether it can make service available on a competitive basis.

14. The court concludes that plaintiff has made service available to the hospital. Post Rock has offered to provide water for domestic use and interior fire sprinklers. The evidence shows that plaintiff has the physical capability to provide such service. *See Rural Water System #1 v. City of Sioux Center,* 967 F.Supp. 1483, 1525 (N.D.Iowa 1997). Finally, plaintiff is obligated under 7 C.F.R. § 1942.17(n)(2)(vii) to provide service to all customers who can feasibly be served. *See North Alamo,* 90 F.3d at 916 (legal requirement to supply water as legal equivalent to making service available).

15. As to the first element, it is undisputed that plaintiff is indebted to the FmHA. Defendant contends, however, that because it paid for the construction of the Ellsworth pipeline, rather than such construction costs being financed by FmHA loans, plaintiff is not entitled to the protection of § 1926(b) with regard to the hospital project. Defendant cites *Bell Arthur Water Corp. v. Greenville Util. Comm'n,* 972 F.Supp. 951 (E.D.N.C.1997). The plaintiff in *Bell Arthur* had borrowed money from the government, but only for a particular expansion project not involved in the litigation. *Id.* The court held that because the project involved in the litigation did not involve facilities funded by FmHA loans, Bell Arthur was not entitled

to the protection of § 1926(b) for that project. *Id.*

16. Unlike Bell Arthur, Post Rock borrowed money from FmHA for construction of nearly all its facilities, including its treatment plant and storage units, and these assets have been pledged as collateral for the loans. The only possible exception is the Ellsworth pipeline.[3] Supplying water to the new hospital, then, would require use of facilities financed by FmHA loans. Therefore, Post Rock has proved both elements and is entitled to the protection of § 1926(b) as to the hospital project.

## II. Irreparable Injury

17. Plaintiff has adequately established that it will suffer irreparable injury if a preliminary injunction is not issued. If the plaintiff cannot begin to lay pipe and otherwise prepare to provide domestic water service to the new hospital site, construction of the hospital will continue and it will become increasingly difficult to do. It is also foreseeable that such a situation would cause delay in the completion of hospital.

## III. Balance of the Hardships

18. The defendant has demonstrated no hardship that would result from a preliminary injunction. It has already laid pipe for construction water and must do the same for fire protection water. If defendant prevails at final judgment in this case, it will be relatively simple for it to connect the pipes to the hospital for domestic water service.

## IV. Public Interest

19. A preliminary injunction will not be adverse to the public interest.

20. Granting the motion for preliminary injunction will serve the public interest by furthering the dual purposes of § 1926(b):

---

**3.** According to the testimony of Post Rock officials, the pipeline was to become collateral for the FmHA loans when the City gave up its ownership interest upon payment of construction cost. Plaintiff presents an argument that the City has, in fact, paid its bonds for construction of the pipeline and that, therefore, ownership of the pipeline (and the related easements) is now with the plaintiff. Because of the court's other rulings, it need not address this argument at this time.

protecting federal loans and encouraging development of rural water districts.

## CONCLUSION

The court concludes that plaintiff has proved all the elements necessary for a preliminary injunction. Accordingly, the court grants plaintiff's application for preliminary injunction. The defendant will be prohibited from competing with plaintiff for provision of domestic water to the new hospital site and shall allow plaintiff access to the Ellsworth pipeline for purposes of establishing service to the new hospital. Federal Rule of Civil Procedure 65(c) provides that a bond must be posted by the applicant for a preliminary injunction as a prerequisite to the issuance of the preliminary injunction. The parties have not addressed the question of what would be an appropriate bond. The court, accordingly, orders the parties to try to reach an agreement as to the amount of the bond and report to the court within ten (10) days of the filing of this order. If the parties have not agreed on an appropriate bond, the court will rule at that time. The court may, within its discretion, waive the bond requirement. *See Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir.1987) (decision to waive bond reviewable under abuse of discretion standard). In this case, in the interest of avoiding delay, the court exercises its discretion in making the preliminary injunction effective immediately, without waiting for plaintiff to post a bond.[4]

At the hearing, plaintiff conceded that the only issue appropriate for preliminary injunction was who had the right to supply water to the hospital. There are other areas where the plaintiff contends it has the right to supply water, but where the City has already been supplying water. As to those areas, the appropriate remedy would be damages and perhaps a permanent injunction. At any rate, the court did not hear evidence concerning those areas, but limited the evidence to provision of water to the new hospital. Al-

though the parties addressed those other areas in subsequent pleadings, the court limits the preliminary injunction to the new hospital.

Also at the hearing and in subsequent pleadings, the plaintiff has suggested that the request for a preliminary injunction should be converted into trial on the merits and request for permanent injunction under Federal Rule of Civil Procedure 65(a)(2). The court declines to do so at this time because, as stated above, there are issues outstanding. However, unless there is new evidence concerning the hospital site, the court can base its decision at trial time on the evidence already presented without need for repetition. Rule 65(a)(2). Furthermore, there is no reason to expect the court to deviate from this opinion as to its factual findings and legal conclusions on issues already addressed.[5]

**IT IS BY THIS COURT THEREFORE ORDERED** that plaintiff's motion for preliminary injunction (Doc. 40) is hereby granted. Defendant is preliminarily enjoined from competing with plaintiff for the right to provide domestic water service to the new Ellsworth County hospital site and from preventing plaintiff access to the Ellsworth pipeline for purposes of providing such service. The preliminary injunction is effective immediately pending resolution of the issue of plaintiff's posting a bond.

---

4. Of course, the City will continue to supply construction water until plaintiff is able to do so, with the understanding that it may be required to compensate plaintiff for lost profits after final resolution of this case.

5. In this regard, the court notes that some time before the preliminary injunction hearing, the parties had reached a tentative settlement that needed the approval of Post Rock's board and the City commission. Post Rock approved the settlement, but the City did not. The court urges the parties to reconsider the proposed settlement, as it appeared to best serve the interests of all involved.