RURAL WATER DISTRICT NO. 1, ELLS-WORTH COUNTY, KANSAS, commonly known as Post Rock Rural Water District, a/k/a Ellsworth County Rural Water District No. 1, Plaintiff,

v.

CITY OF WILSON, KANSAS, Defendant.

Civil Action No. 96–1297–WEB.

United States District Court,
D. Kansas.

Oct. 26, 1998.

Royce E. Wallace, Wichita, KS, William S. Woolley, Patterson, VanZandt, Powell, Woolley & Harris, L.C., Wichita, KS, Victor S. Nelson, Wichita, KS, for Plaintiff.

Allen G. Glendenning, Watkins, Calcara, Rondeau, Friedman, Bleeker, Glendenning & McVay, Chtd., Great Bend, KS, for Defendant.

## OPINION AND ORDER

WESLEY E. BROWN, District Judge.

This is an action brought by Rural Water District No. 1, Ellsworth County, Kansas, to enjoin the City of Wilson from providing domestic water service to certain users outside the Wilson city limits. Plaintiff contends the provision of such service violates 7 U.S.C. § 1926(b). A bench trial on the matter was held on September 15, 1998. The court has considered the evidence presented at trial, the relevant law and the submissions of the parties and is prepared to rule.

■ As an initial matter, the court addresses several pretrial motions. Defendant's motion to compel (Doc. 89), plaintiff's motion for extension of time (Doc. 93) and defendant's motion to reschedule (Doc. 98) are moot. At a hearing on August 31, 1998, the court heard oral argument on defendant's motion to amend the pretrial order (Doc. 92) and plaintiff's motion for sanctions under Federal Rule of Civil Procedure 11 (Doc. 95). Defendant moves to amend the pretrial order to remove a stipulation that plaintiff is indebted to the United States. Defendant received information that Post Rock was never current in its payments to the government and that no action was ever taken to enforce the debt. Defendant argues that this is a *de facto* forgiveness of the debt. The court disagrees. Although Post Rock is not current on the loan and is not making full payments, it does make monthly payments and has paid down some of the principal. Under these circumstances, the debt has not been not forgiven, and the plaintiff remains indebted to the United States. Therefore, the court denies the motion to amend as futile.

In response to the motion to amend, the plaintiff moves for Rule 11 sanctions. The court denies this motion as well. Although the court rejected defendant's argument regarding forgiveness of the debt, the court believes this was a "nonfrivolous argument for the extension, modification, or reversal of existing law," which does not warrant sanctions. Fed.R.Civ.P. 11(b)(2).

Finally, to the extent defendant moves for sanctions regarding the failure of plaintiffs to timely produce discovery, the court denies the motion as untimely.

## FINDINGS OF FACT

1. Rural Water District No. 1, Ellsworth County, Kansas ("Post Rock") is a duly organized and validly existing rural water district within the State of Kansas. Wilson ("City") is a municipal corporation validly formed and existing in Ellsworth County, Kansas. [Stipulated at trial]. Larry Ptacek is the mayor of the City of Wilson. [Testimony of Larry Ptacek].

2. Post Rock was formed on March 5, 1979, by action of the Board of Commissioners of Ellsworth County, Kansas, pursuant to K.S.A. § 82a–612. Its boundaries include all of Ellsworth County except the incorporated cities, including the City of Wilson as it existed on March 5, 1979. [Stipulated at trial].

3. Lee Roy Charvat was a member of Post Rock's board of directors from 1980 until February 1998. He was chairman of Post Rock's board in 1995 and 1996. [Testimony of Lee Roy Charvat].

4. David Bailey is Post Rock's general manager. He has been employed by Post Rock for more than fourteen years. Bailey holds a number of licenses and certifications, including a Grade Four license, which authorizes him to work on any water system in Kansas. [Testimony of David Bailey].

5. Michael Olson is a civil engineer who works for a private firm that contracts with Post Rock for virtually all of its engineering services. Olson oversees the firm's work with Post Rock on a daily basis. It is Olson's function to evaluate whether Post Rock can feasi-

bly serve potential customers without curtailing service to existing users. [Testimony of Michael Olson].

6. Post Rock obtains raw water from Kanapolis Reservoir, treats the water to regulatory standards, and distributes the water to more than 1,100 customers in its territory of more than 4000 square miles in north central Kansas. [Stipulated at trial].

7. Post Rock is an "association" eligible to receive loans and grants from the United States Department of Agriculture Farmers Home Administration ("FmHA") and its successor, USDA Rural Development. 7 U.S.C. § 1926(a).[1] [Stipulated at trial].

8. To help finance construction of its system, in the mid–1980's Post Rock borrowed $6,463,000.00 from the FmHA. The indebtedness is evidenced by promissory notes dated November 28, 1984 and March 3, 1986, and secured by real estate mortgages dated October 3, 1985 and March 1, 1986. [Stipulated at trial].

9. Post Rock has remained continuously indebted to the FmHA and owes approximately $7,994,055.47 (unpaid principal and accrued interest as of July 15, 1998). Post Rock has paid approximately $365,000 in principal. The FmHA funds were used to build Post Rock's treatment plant and most of its pipeline and storage systems. [Stipulated at trial].

10. The City owns and operates its own groundwater wells and water treatment and distribution system. The City distribution system serves domestic and fire protection water to customers (i) within the 1979 city limits; (ii) within areas annexed into the City prior to January 19, 1995; (iii) within areas annexed after January 19, 1995; and (iv) to some customers outside the city limit. [Stipulated at trial].

11. Post Rock's treatment facility has the capacity to produce one million gallons of potable water per day. Average output has been 400,000 to 600,000 gallons per day in summer months and 300,000 gallons per day in winter months. In its record month, June 1998, Post Rock averaged an output of approximately 670,000 gallons per day. [Testimony of David Bailey].

12. Post Rock has the legal right to sell water and deliver it to customers located outside the March 5, 1979 city limits of the incorporated cities in Ellsworth County, including the City of Wilson. [Stipulated at trial].

13. On January 19, 1995, Post Rock sent a letter to the City informing the City of the existence of 7 U.S.C. § 1926(b) and attempting to initiate a dialogue with the City. On March 6, 1995, representatives of Post Rock met with the Wilson City Council to discuss the letter, the statute and opportunities to work together under the terms of the statute. No agreements were reached, and the extent of Post Rock's rights under § 1926(b) remains in dispute. [Stipulated at trial].

14. On March 20, 1995, the City adopted Ordinance 683, which prescribed a minimum fire flow requirement of 600 gallons of water per minute indefinitely for all parties selling water within the City limits. The ordinance was repealed in 1997. [Stipulated in Pretrial Order].

15. At issue in this case are the Purma and Prairie Estates additions, which are outside the 1986 and January 1995 Wilson city limits. [Stipulated in Pretrial Order]. On April 20, 1995, at a special meeting of the City Council, the City annexed the Purma Addition. [Stipulated at trial].

16. Also at issue in this case is property owned by the Brandas. The property holds a house and a workshop. Sometime before 1994, the City start-

---

**1.** For the sake of efficiency, the court will refer to both the Farmers Home Administration and its successor, the RDA, as "FmHA."

ed providing domestic water service to the Branda property. The Brandas divorced. Mrs. Branda was awarded the house, and Mr. Branda was awarded the shop in the property settlement. At that time, water service was split, and the City continued to serve both structures. Mr. Branda has put a mobile home near the shop and continues to obtain water from the City. The City annexed the Branda property in 1996. The City has set aside the money the Brandas have paid for water service in a separate account.

17. Post Rock learned of Ordinance 683 and the annexation of the Purma Addition through the newspaper. [Testimony of Lee Roy Charvat].

18. The City installed a six-inch water main in the Purma Addition for domestic and fire protection water in December 1995. [Stipulated in Pretrial Order]. The City began providing water for domestic use in July 1997. The City uses the same water mains for domestic water and fire protection. [Testimony of Larry Ptacek]. At that time, as now, the Purma Addition consisted of two duplexes. [Testimony of Lee Roy Charvat].

19. There has been no development in Prairie Estates, and no development is planned at this time. However, the City has considered extending water mains to the area, which can be used for fire protection and domestic water. [Testimony of Larry Ptacek].

20. Bailey testified that potential users within Post Rock's territory have three choices for obtaining potable water: (1) obtain water service from Post Rock; (2) drill their own water wells; or (3) haul water. [Testimony of David Bailey].

21. Post Rock's policy requires a prospective user first to submit an application for a benefit unit along with an $800 application fee. As an alternative to this requirement, the potential user may simply pay for an engineering study without filing an application. Post Rock then hires an independent engineering firm to determine wheth-

er the user can be adequately served by Post Rock without curtailing service to existing Post Rock customers. If the engineer finds that there is sufficient capacity to serve the potential user and determines what additions will be required to the system, Post Rock then calculates the cost of adding the potential user to the system. [Testimony of Lee Roy Charvat; Testimony of David Bailey].

22. Under Post Rock's policy, the new customer pays the costs associated with adding him to the system. According to Post Rock, if the customer is unwilling or unable to pay these costs, then his only options for obtaining water are drilling his own well or hauling water; he does not have the option of connecting to a municipal water system. [Testimony of Lee Roy Charvat].

23. Post Rock never received applications from prospective water users in the Purma Addition or the Prairie Estates Addition. [Testimony of Lee Roy Charvat]. Bailey discussed the process with one of the Purma developers, but the developer did not apply for a benefit unit or agree to pay for an engineering study. [Testimony of David Bailey].

24. According to an April 1997 engineering study, to connect to the Purma and Prairie Estates additions, Post Rock would install a line leading from its 10″ main line that lies just north of a county road running east and west through Wilson. This 10″ main lies some 2200 to 4400 feet north of the properties at issue in this case. [Plaintiff's Exhibit 15].

25. To connect the two duplexes currently in the Purma Addition, Post Rock would need to lay 4860 feet of pipe from its main line at an estimated cost of $32,000. [Testimony of Michael Olson; Plaintiff's Exhibit 15].

26. Post Rock contends the owners of the duplexes should pay the $32,000 for installing a main line to the duplexes. Post Rock, however, would own the

line and would be able to use it to serve any future users. Post Rock would not refund the cost of the main line if additional users were added. [Testimony of Lee Roy Charvat].

27. In fact, Charvat testified that if serving a new user means Post Rock must make even more extensive improvements to its system, such as installing a pumping station, Post Rock's policy is that the prospective customer pays for the improvements. Charvat testified that Post Rock has never had to pay for easements, but if it had to condemn an easement, the new customer would be required to pay the expenses of condemnation. [Testimony of Lee Roy Charvat].

28. The $32,000 figure includes twenty-five dollars per hour for labor costs, which is more than Post Rock actually pays its workers, including benefits. [Testimony of David Bailey].

29. From 1993 to 1997, Post Rock has installed more than 180 lines to connect new customers. The lines are an average of approximately 3200 feet long. The longest line is 10,000 feet. In the past when Post Rock has extended such long lines to new customers, those customers were not near another municipal water source. [Testimony of David Bailey]. There was no evidence as to the average cost to new users.

30. Post Rock has in place all the necessary easements and permits to connect from its 10″ main line to these additions. [Testimony of David Bailey; Exhibits 12 & 13]. The 10″ line carries enough water to serve the additions. [Testimony of Michael Olson]. Assuming the availability of materials and a contractor, Post Rock could construct and install pipelines to connect Purma and Prairie Estates to its main line in three to seven days. [Testimony of David Bailey].

31. Post Rock has the capacity and ability to deliver sufficient water to serve the two existing duplexes in the Purma Addition, all water customers located outside the January 1995 Wilson city limits who are currently connected to the City's water system, and all thirty-seven projected residences and a few businesses anticipated to be located in the Prairie Estates Addition. [Testimony of Michael Olson].

32. If Post Rock were to serve the Purma and Prairie Estates additions, it expects to use its Water Tower # 2 for that purpose. That tower holds 200,000 gallons of water and is replenished at a rate of 525 gallons per minute. The City's water tower holds 50,000 gallons of water. [Testimony of David Bailey].

33. Post Rock has the capacity to deliver water to these additional users without unreasonably curtailing service to existing customers. [Testimony of Michael Olson]. Connection to the Purma Addition may mean rerouting water to one existing customer to maintain adequate pressure, but this can be accomplished without unreasonable interruption of service. [Testimony of David Bailey].

34. Regardless of who provides the Purma and Prairie Estates additions with potable water, the City of Wilson has the legal right to supply the additions with fire protection water. Post Rock does not have the capacity to provide fire protection water and is under no legal obligation to do so. [Testimony of Lee Roy Charvat].

35. Generally, Post Rock does not do engineering feasibility studies until it receives an application from a potential user. [Testimony of Lee Roy Charvat]. However, in November 1996, Post Rock commissioned engineering studies to address the "making service available" issue for the Purma and Prairie Estates additions. There has been no engineering study done for the Branda property. [Testimony of Michael Olson]. The Branda property is farther from Post Rock's ten-inch main than the Purma Addition.

36. Olson testified that the engineering studies are date specific. That is, although Post Rock has the capacity

at this time to serve the Prairie Estates Addition as it was originally planned, it may not have that capacity in the future if the needs of the Prairie Estates Addition are different than expected or if Post Rock has expanded its system to other users before the Prairie Estates Addition is developed. [Testimony of Michael Olson].

37. Post Rock has declined to serve potential customers where engineering studies have shown either (1) that serving the new customer would curtail service to existing users or (2) that for reasons of elevation, Post Rock would be unable to deliver water at the minimum pressure required by law. Charvat testified as to his understanding that Post Rock is required to serve new customers if it is feasible. [Testimony of Lee Roy Charvat]. Post Rock has, on occasion, allowed cities or other water districts to serve new customers in its territory. In those cases, Post Rock has reserved the right to serve the customers in the event that Post Rock improves its system. [Testimony of David Bailey].

38. Under Kansas Law, all water lines must maintain a positive water pressure of at least twenty pounds per square inch. Adding a new user to the system, then, curtails service to an existing user if it causes water pressure to the existing user to fall below twenty pounds per square inch. [Testimony of David Bailey, Michael Olson].

### CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1331. The court has jurisdiction of the parties. Venue is proper in this district. 28 U.S.C. § 1391(b).

2. 7 U.S.C. § 1926 authorizes the Secretary of Agriculture, through the FmHA, to make or insure loans to "associations," including rural water development districts. § 1926(a)(1). It is undisputed that plaintiff is an association within the meaning of 7 U.S.C. § 1926, and that it is indebted to the FmHA.

3. This case turns on the application of 7 U.S.C. § 1926(b), which provides:

The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

4. Section 1926(b) serves two principal purposes: (1) it encourages rural water development by expanding the number of potential users, resulting in a lower cost per user; and (2) it safeguards the viability of associations and FmHA loans, protecting both from the expansion of nearby towns and cities. *Scioto County Reg. Water Dist. 1 v. Scioto Water Inc.*, 103 F.3d 38 (6th Cir.1996), *cert. denied,* 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). The courts have held that § 1926(b) should be liberally interpreted to protect FmHA-indebted rural water associations from municipal encroachment. *North Alamo Water Supply Corp. v. City of San Juan,* 90 F.3d 910, 915 (5th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).

5. A claim of a violation of § 1926(b) is properly brought under 42 U.S.C. § 1983. Although some courts have analyzed claims of violations of § 1926(b) without reference to § 1983, every court to address the issue has concluded that § 1926(b) is properly enforced through a claim under § 1983. *Wayne v. Village of Sebring,* 36 F.3d 517, 529 (6th Cir.1994); *Bell Arthur Water Corp. v. Greenville Utilities Comm'n,* 972 F.Supp. 951, 963 (E.D.N.C.1997); *Rural Water*

*System No. 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1505 (N.D.Iowa 1997).

6. The primary tool for enforcement of § 1926(b) is injunction. *North Alamo,* 90 F.3d at 917. The court's decision whether to grant a permanent injunction is reviewed for abuse of discretion. *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.,* 82 F.3d 1533, 1555 (10th Cir. 1996).

7. Plaintiff contends it is protected under § 1926(b) and that the City of Wilson is prohibited from competing for the right to supply the Purma and Prairie Estates additions and the Branda property with domestic water.

8. An association seeking the protection of § 1926(b) must establish (1) that it has a continuing indebtedness to the FmHA and (2) that the City has encroached on an area to which the association has "made service available." *North Alamo,* 90 F.3d at 915; *see also Glenpool Utility Services v. Water Dist. No. 2,* 861 F.2d 1211, 1214 (10th Cir.1988).

9. As to the first element, having rejected defendant's argument regarding *de facto* forgiveness of the debt, the court concludes, based on the stipulated facts, that Post Rock is indebted to FmHA.

10. Addressing the second element, there is no dispute that defendant is "encroaching" by providing service to a customer within plaintiff's service area. Defendant argues, however, that plaintiff has not "made service available" to the Purma and Prairie Estates additions and the Branda property.

11. The evidence shows that plaintiff has the physical capability to provide such service, at least as to the Purma addition. *See Rural Water System # 1,* 967 F.Supp. at 1525. Furthermore, there is no dispute that plaintiff has the legal right to provide water to the properties at issue. *See id.* at 1537 (physical capability insufficient; association must also have legal right to serve). In fact, plaintiff is obligated under 7 C.F.R. § 1942.17(n)(2)(vii) to provide service to all customers who can feasibly be served. *See North Alamo,* 90 F.3d at 916 (legal requirement to supply water

as legal equivalent to making service available).

12. The defendant argues that plaintiff's ten-inch main is too far from the disputed properties for plaintiff to have made service available under the "pipe in the ground" test. There are cases holding that an association is not protected unless it has pipe in the ground in or immediately adjacent to the disputed area. *E.g., Lexington–South Elkhorn Water District v. City of Wilmore,* 93 F.3d 230, 235 n. 2, 237 (6th Cir.1996) (water district had not made service available prior to City's provision of water services where water district's line was .1 to .4 miles from the disputed property). However, in *Glenpool,* the Tenth Circuit, holding that the indebted association was entitled to § 1926(b) protection, accepted the district court's finding that the indebted association "could and would provide water service ... within a reasonable time of an application for such service." *Glenpool,* 861 F.2d at 1213. That the association had a pipeline within fifty feet of the disputed property was a factor, *id.,* but the "making service available" question turned on reasonableness of time rather than the particular distance. In this case, the evidence is that Post Rock can begin serving the Purma addition within three to seven working days of receiving an application. This is a reasonable time frame for provision of service. *See Rural Water Dist. No. 1, Ellsworth County, Kan. v. City of Ellsworth,* 995 F.Supp. 1164, 1167, 1169 (D.Kan.1997) (concluding, for purposes of preliminary injunction, that association had made service available where it had pipeline 700 feet from disputed property and could serve property within three days of getting easements, materials and a contractor). Therefore, under the Tenth Circuit's formulation of the "pipe in the ground" test, the plaintiff has made service available.

13. The remaining question, then, is whether Post Rock is entitled to have a new customer pay for the cost of being added to the system and still be protected by § 1926(b). None of the published decisions have dealt with this issue. Plaintiff's counsel objected at trial to

evidence about the cost of hooking up new customers, arguing that cost is irrelevant under § 1926(b). The court overruled the objection, noting that this is an equitable proceeding.

14. As the court held in *Rural Water District No. 1*, 995 F.Supp. at 1169, § 1926(b) protection is not contingent upon an association's ability to compete with an encroaching municipality's rates. The statute is designed to protect associations from competition from nearby municipalities. However, this does not authorize an association to charge unreasonably high rates or fees while claiming the statute's protection. The court concludes that conditioning service on the user's agreement to pay unreasonable fees is not "making service available." Furthermore, the court concludes under the facts of this case that to make new customers pay for improvements to the system is unreasonable. Post Rock is entitled to charge its normal application fee, but it may not force customers to pay for its distribution lines and other infrastructure.

15. Nevertheless, the City has violated § 1926(b) by encroaching on Post Rock's territory before Post Rock has had the opportunity to make service available. Under § 1926(b), the City is not to provide domestic water service within Post Rock's territory unless and until Post Rock has declined to serve the area.

16. With respect to the two duplexes in the Purma Addition, therefore, the City shall be enjoined from continuing to provide water service if Post Rock agrees to do so in a reasonable time and at a reasonable cost, as discussed above. If, however, Post Rock insists that its customers pay the costs of expansion of its system, then it will not have made service available and the City will be entitled to continue providing potable water.

17. As for the Prairie Estates Addition, Post Rock has failed to establish when, if ever, there will be any domestic water users in that addition, just what their water requirements will be or if Post Rock will at that time have the capacity to serve those users. Currently, there are no plans to develop the area, and Post Rock's engineering expert could not rule out future changes in Post Rock's system that would prevent it from serving Prairie Estates in the future. Thus, an injunction as to Prairie Estates would be premature. Of course, the court's legal rulings will apply equally to the Prairie Estates addition should that area ever be developed.

18. Finally, the court denies plaintiff's request for injunctive relief as to the Branda property. The plaintiff has not adequately shown that it can serve the Branda property. Moreover, it is unclear just how long the City has been providing water to that property without complaint from Post Rock. Undisputedly, it started before 1995. Between that time and the time of this lawsuit, Post Rock never made any effort to extend its system to the Branda property. Even now, it has not commissioned an engineering study to determine if such service would be feasible. Post Rock, therefore, has not made service available to the Branda property. Moreover, the court concludes that to the extent the City properly served the Branda property initially, it was also entitled to split the service upon the Brandas' divorce.

19. Having brought its claim under § 1983, Post Rock seeks attorney fees 42 U.S.C. § 1988. Section 1988 provides that in cased brought under § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Although the decision is discretionary, the court's discretion is narrow once a plaintiff has met the prevailing party standard. *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir.1997). A plaintiff prevails when the court grants relief that alters the legal relationship between the parties "by modifying the defendant's behavior in a way that directly benefits the plaintiff". *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). The plaintiff's degree of success does not affect eligibility for attorney fees. *Id.* In this case, the plaintiff is a prevailing party within the meaning of § 1988 because it obtained limited injunctive relief. Furthermore, it is apparent that this litigation was a catalyst lead-

ing to the City's decision to repeal Ordinance 683, which violated § 1926(b) when applied to plaintiff. *See Beard v. Teska,* 31 F.3d 942, 952 (10th Cir.1994) (outlining "catalyst" test for prevailing party).

20. Normally a prevailing plaintiff is entitled to attorney fees unless special circumstances make such an award unjust. *Kansas Hosp. Ass'n v. Whiteman,* 967 F.Supp. 452, 454 (D.Kan.1997). In this case, awarding attorney fees would be unjust because the matter was not timely raised. Plaintiff did not mention § 1983, § 1988 or a claim for attorney fees in the complaint, the amended complaint or the pretrial order. The matter of attorney fees was not raised until the plaintiff filed its trial brief the day before trial.

**IT IS BY THIS COURT THEREFORE ORDERED** that the defendant is hereby enjoined from denying plaintiff the opportunity to provide water service to the Purma Addition to the City of Wilson under the terms outlined in this opinion. Plaintiff's claims for further injunctive relief and for attorney fees are denied.

**IT IS FURTHER ORDERED** that defendant's motion to amend (Doc. 92) is hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for sanctions (Doc. 95) is hereby denied.

**IT IS FURTHER ORDERED** that Documents 89, 93 and 98 are moot.