556 So.2d 914 (1990)
J.H. WILLIAMS, Plaintiff-Appellant,
v.
EDWARD D. JONES & CO. and H.J. "Shawn" Daily, Defendants-Appellees.
No. 88-1117.
Court of Appeals of Louisiana, Third Circuit.
February 7, 1990.
Writ Denied April 16, 1990.
Brittain, Williams, McGlathery & Passman, Joe Payne Williams, Natchitoches, for plaintiff-appellant.
Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, for defendants-appellees.
Before DOMENGEAUX, C.J., and FORET and LABORDE, JJ.
DOMENGEAUX, Chief Judge.
The present case involves a broker's liability for a customer's losses on transactions in the bond market. The trial judge found no liability and dismissed the customer's suit. We affirm.
The facts of this case are best summarized by quoting from the trial court's written reasons:
"This matter involves a controversy surrounding the purchase of certain municipal bonds. The plaintiff, J.H. Williams, pursuant to discussions with H.J. "Shawn" Daily, a representative of Edward D. Jones & Company, purchased certain bonds through Edward D. Jones & Company. The bonds, Washington Public Power Supply System bonds (WPPSS), subsequently became far less valuable and defaulted on its coupon payments. Mr. Williams alleges that Edward D. Jones & Company had certain adverse information concerning these bonds *915 prior to his purchase, which information was not made available to Mr. Daily but could have been secured by him and which information was not disclosed by him. This omission, it is alleged, would have precluded the purchase of an otherwise unwise investment. This case resembles the inquiry of former Senator Howard Baker at the Watergate hearings wherein he continually asked, `What did the President know and when did he know it?'
"Pursuant to conversations with Mr. Daily, Mr. Williams purchased WPPSS bonds on three different occasions, namely:
1) Face amount of bonds: $100,000.00 Date of purchase: June 24, 1980 Purchase price: $104,755.00
2) Face amount of bonds: $10,000.00 Date of purchase: August 21, 1980 Purchase price: $10,337.15
3) Face amount of bonds: $130,000.00 Date of purchase: December 1, 1981 Purchase price: $69,267.61
"Mr. Williams and Mr. Daily were friends, were both in the Rotary Club, and had conducted some business in the stock market together in 1978. At the time in question, Mr. Williams had some Alexandria Housing Authority bonds with which he was not pleased. He desired to trade these bonds, take a loss for income tax purposes, and receive bonds of as good or better rating. Mr. Daily initiated the consideration of the WPPSS bonds. There is substantial controversy over exactly what was requested, but suffice it to say that Mr. Williams wanted bonds of equal or better rating or quality than the housing authority bonds he was trading.
"A thorough history of the WPPSS bonds would not be particularly relevant here although some discussion is necessary. Tax-exempt revenue bonds, in part "guaranteed" by municipalities, were authorized to finance five nuclear power projects referred to as Projects 1-5. The guarantees were later declared unenforceable in the case entitled Chemical Bank vs. Washington Public Power Supply System, reported in 99 Wash.2d 772, 666 P.2d 329 (1983). The last public offering of the Projects 4 and 5 bonds was March, 1981, in which Merrill Lynch and others carried those series as "inventory" bonds. Due to cost overruns, and obviously other factors, default on the bonds actually took place in 1984.
"The facts relating to the bonds throughout the period in controversy are likewise important. Throughout this period, the WPPSS bonds carried at least an "A" rating by reliable rating services. Throughout this period, the municipalities continued to guarantee the project. Throughout this period, the coupon payments were paid to the bond holders. It was only after the last acquisition that the contracts of guaranty were declared unenforceable and coupon payments were missed. It was after these acquisitions that WPPSS admitted it could no longer service its debt obligations and in fact defaulted on its obligations.
"Before the first purchase, the Three Mile Island tragedy occurred, which was known to anyone who could read a newspaper or see a television set. Obviously, Mr. Williams need not rely on anyone to advise him on at least this aspect of nuclear power projects."
"There is obvious conflict over what was said during the sessions in which the bond purchase was discussed. It does seem clear that Mr. Williams was dissatisfied with the Alexandria Housing Authority bonds and wanted to sell those and purchase equal or better bonds. The Alexandria Housing Authority bonds were unrated and the WPPSS bonds were rated."
On appeal, defendants raise for the first time the issue of prescription. Because Williams' suit was filed more than one year from the date WPPSS first missed its coupon payment, the defendants contend the suit was prescribed. Alternatively, the defendants urge that the date of Williams' correspondence to Daily, in which Williams threatened to hold Daily responsible for his losses, should be used as the operative one year prescriptive date.
*916 Regardless of which date is used, it is clear that Williams' suit has not prescribed. First, Williams alleged violations of the Louisiana Blue Sky Law, R.S. 51:701 et seq., which has a two year prescriptive period. Certainly, this claim did not prescribe. Second, Williams' allegation of a breached fiduciary responsibility constitutes a personal action which is subject to a liberative prescriptive period of ten years. La.C.C. Art. 3499; Levy v. Billeaud, 443 So.2d 539 (La.1983); Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034 (La.1987).
In determining the liability of a broker in a bond transaction, we must look to the nature of the transaction and the relationship between the broker and the customer. In this case, Williams could be considered a sophisticated investor. He held a large and widely diversified portfolio with which he was personally familiar. The transaction between Williams and Daily was primarily a request for information rather than a request for advice. The record indicates that Williams wanted to trade certain bonds for others of equal or better rating. His interest was the rate of return on the new bonds; he evidenced no concern about the risk or potential instability of the bonds.
When informing Williams of the availability of the WPPSS bonds, Daily gave Williams the current ratings and investment return. The WPPSS bonds met the criteria set forth by Williams. Daily and Williams did not discuss the risk factors in nuclear facility bonds. They did not discuss the historical ratings of the bond issue, nor did they discuss the background of the issue. Williams did not ask Daily to investigate the issue any further. These circumstances, according to the evidence, represent an ordinary bond transaction.
We affirm the trial court's factual finding that Daily did not breach a fiduciary duty to Williams in this instance. Due to the nature of the municipal bond market, Daily was obligated to provide no more information than that which he did provide. Perhaps if Williams had requested more information, or perhaps if this were a stock transaction, Daily may have had a higher duty. The expert testimony of Mr. David Baker, an SEC arbitrator, supports this finding.
Williams raises the additional question of whether Daily was negligent in failing to give him all of the information available to Edward D. Jones & Co. on the WPPSS bonds. He contends that such negligence constitutes a breach of the Louisiana securities laws. We have previously noted that Daily's fiduciary responsibilities did not include the duty to investigate bond issues beyond the request of his client, Williams. By the same token, the failure to so investigate does not constitute negligence. However, even if we were to find Daily negligent, Williams' cause of action would fail for lack of causation.
While there was much dispute over exactly what information was available at the time of the purchases, our finding of no negligence is based on Mr. Baker's expert testimony. Given the information generally available in 1980 and 1981, the purchase of WPPSS bonds was prudent at that time. The fact that Edward D. Jones & Co. chose not to underwrite or inventory those bonds is not dispositive. Such a decision is based on many factors, only one of which is the inherent risk of nuclear facility bonds, a risk that would be common knowledge to the investing public. The negligence standard of La.R.S. 51:712 has not been met. Daily did not make an untrue statement, nor did he omit to state a material fact necessary to the transaction.
This case is governed by the causation standard articulated in numerous federal cases interpreting federal securities law, some of which also interpret the similar Louisiana Blue Sky Law. We quote from Canizaro v. Kohlmeyer & Co., 370 F.Supp. 282 (E.D.La.1974), aff'd, 512 F.2d 485 (5th Cir.1975):
... [T]he line of demarcation must be drawn in terms of cause and effect: To borrow a phrase from the law of negligence, did the injury to the plaintiff flow directly and proximately from the actions of this particular defendant? *917 Canizaro, at 287, citing Hill York Corp. v. American International Franchises, 448 F.2d 680 (5th Cir.1971).
The Canizaro court held that the defendant's actions were not the proximate cause of the plaintiff's loss. Likewise, we hold Daily's actions were not the proximate cause of Williams' loss, nor did Daily breach any fiduciary duty to his customer, Williams.
The judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.