# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 1, 2014

Lyle W. Cayce
Clerk

No. 11-31090

ELISE Y. FISHMAN, Succession of, Louis Y. Fishman as Independent Executor; ANN C. FISHMAN, As Trustee of Testamentary Trust II under the Will of Ralph H. Fishman, As Trustees of Testamentary Trust III under the Will of Ralph H. Fishman; RALPH H. FISHMAN, Will of, Louis Y. Fishman and Ann C. Fishman, as Trustees of Testamentary Trust II; LOUIS Y. FISHMAN, As the Independent Executor of the Succession of Elise Y. Fishman, as Trustees of Testamentary Trust II under the Will of Ralph H. Fishman, as Trustees of Testamentary Trust III under the Will of Ralph H. Fishman,

Plaintiffs–Appellants,

v.

MORGAN KEEGAN & COMPANY, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-2

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiffs–Appellants Louis Y. Fishman and Ann C. Fishman, as executors and trustees of various successions and trusts (collectively, the Fishmans),

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31090

appeal from the United States District Court for the Eastern District of Louisiana's judgment on their claim under the Louisiana Securities Law in favor of Defendant–Appellee Morgan Keegan & Company (Morgan Keegan).  The Fishmans, who purchased auction rate securities (ARS) underwritten by Morgan Keegan, allege that Morgan Keegan failed to disclose material information about how and when it placed bids for its own account in ARS auctions.  On appeal, the Fishmans contend (1) that the Louisiana statute at issue does not require proof of loss causation and (2) the proper time to determine what the plaintiffs "could have known" as required by the statute is the time of sale, not a later time.  We affirm the district court's judgment.

**I**

This case concerns the disclosures made by ARS underwriters in advance of the total collapse of the ARS market in 2008.  ARS are long-term bonds or preferred-stock shares that pay interest at rates that are reset at auctions held every 7, 28, 35, or 48 days.  These auctions are conducted as "Dutch" auctions, in which buyers bid the amount of ARS they would like to purchase and the minimum interest rate they would accept.  If there are bids sufficient to enable the sale of all of the securities offered for sale at that auction, the lowest interest rate necessary for the sale of all of the ARS offered at the auction—called the "clearing rate"—is the applicable interest rate for all of the sold ARS until the next auction.  If, however, there are not enough bids in an auction to sell all of the ARS offered, the auction "fails," and a penalty interest rate applies until the next successful auction.

The periodic-auction feature of ARS historically made ARS attractive to investors since it provided liquidity.  So long as there were enough bids in auctions, an ARS investor could, if he desired, hold ARS for a short time period, then sell his holdings at the next auction.  If there were insufficient bids, then the investor could not sell his holdings, but, in practice, auction failure rarely

occurred.  From the inception of ARS until 2007, only thirteen ARS auctions failed.

Superficially, then, the ARS market appeared to function well. Nonetheless, on May 31, 2006, the SEC reported that it settled an investigation into the adequacy of fifteen firms' disclosures of their ARS practices, including disclosure of how and when the firms bid for their own account to prevent failed auctions.  Morgan Keegan was one of the firms included in this investigation. Pursuant to the settlement, Morgan Keegan updated its ARS disclosures, mailed them to its customers, and posted them on its website.  These disclosures stated that "Morgan Keegan is permitted, but not obligated to submit orders for Auctions for its own account . . . and routinely does so in its sole discretion."  In addition, the disclosures noted that Morgan Keegan may bid for its own account to prevent failed auctions and stated that investors "should not assume . . . that Morgan Keegan will [continue to place bids] or that Failed Auctions will not occur."

Since the inception of ARS, Morgan Keegan and other ARS underwriters had in fact routinely placed bids for their own account to prevent auction failure. By early 2008, however, this practice had become untenable.  During late 2007 and early 2008, potential purchasers, who perceived greater risk in the market, began to demand higher interest rates—which, in turn, necessitated increased intervention by underwriters to prevent auction failure.  But as the markets worsened, underwriters could not sustain their support of the market.  As auction failures mounted, investors panicked.  In February 2008, the ARS market completely collapsed, and virtually every subsequent auction to date has failed.  Accordingly, investors have not been able to liquidate their positions through the auction process.

The Fishmans entered the ARS market in 2005, when Louis Fishman, acting with authority with respect to the Fishmans' accounts, directed the

No. 11-31090

Fishmans' broker and investment advisor, Waters Parkerson & Company (WPCO), to purchase ARS for the Fishmans' accounts. WPCO identified an issue of ARS underwritten and sold by Morgan Keegan, the Louisiana Local Governmental Environmental Facilities and Community Development Authority Revenue Bonds Series 2004B (the 2004B Bonds). On May 5, 2005, WPCO purchased $525,000 of the 2004B bonds, $500,000 of which it later transferred on its internal ledger to the Fishmans. Since WPCO was an institutional customer, Morgan Keegan did not advise WPCO in connection with this purchase, nor did Morgan Keegan have any contact with the Fishmans.

Following the collapse of the ARS markets, the Fishmans have been unable to sell their ARS holdings. Auctions continue to fail, and the Fishmans have been unable to find an alternative market. Meanwhile, the 2004B Bonds have not defaulted and continue to pay the penalty interest rate.

On January 4, 2010, the Fishmans filed suit against Morgan Keegan, alleging violations of (1) section 17(a) of the Securities Act of 1933, (2) sections 10(b) and 15 of the Securities Exchange Act of 1934 and rule 10b-5 promulgated thereunder, (3) section 712 of the Louisiana Securities Law, and (4) the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA). Before trial, the district court granted partial judgment on the pleadings in favor of Morgan Keegan after concluding that the Fishmans' section 15 claim was not timely filed and that the Fishmans did not state a claim on which relief could be granted under section 17(a) and LUTPA. After holding a bench trial on the Fishmans' two remaining claims—under section 10(b) of the Securities Exchange Act of 1934 and section 712 of the Louisiana Securities Law, the district court ruled in favor of Morgan Keegan.

The Fishmans appeal the district court's ruling only with respect to their state-law claim, contending that the district court (1) erroneously required the Fishmans to prove loss causation and (2) improperly looked beyond the time of

No. 11-31090

the ARS sale in determining whether the Fishmans had actual knowledge of a violation or had notice of facts that, in the exercise of due diligence, should lead to actual knowledge. In response, Morgan Keegan argues that (1) the Fishmans' claim is time barred, (2) the Fishmans waived their argument regarding loss causation, and (3) the Fishmans could have known of Morgan Keegan's alleged omission at the time of purchase.

## II

The Fishmans assert that the district court incorrectly held that section 712 of the Louisiana Securities Law requires proof of loss causation. Because the Fishmans failed to raise the loss causation argument in the district court, we affirm on that basis.

## A

"Under our general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'"[1] "Although no bright-line rule exists for determining whether a matter was raised below, for a litigant to preserve an argument for appeal, it must press and not merely intimate the argument during the proceedings before the district court."[2] Put otherwise, "[t]he argument must be raised 'to such a degree that the district court has an opportunity to rule on it.'"[3]

Upon review of the parties' filings in the district court, the Fishmans plainly did not adequately raise their loss-causation claim and, in fact, pressed

---

[1] *State Indus. Prods. Corp. v. Beta Tech., Inc.*, 575 F.3d 450, 456 (5th Cir. 2009) (citing *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996) (per curiam)).

[2] *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011) (citations omitted) (internal quotation marks omitted).

[3] *Id.* (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994)).

arguments that would lead one to conclude that loss causation is a requirement under Louisiana law. For example, in their trial memorandum, the Fishmans discussed the elements of their federal claim, including loss causation, and then stated that "[t]he same facts . . . also proves [sic] Morgan Keegan's violation of Louisiana's Blue Sky law." The Fishmans cited a Louisiana case[4] for the proposition that Louisiana courts can look to cases interpreting the federal securities laws for guidance in interpreting the Louisiana Securities Law. Likewise, in their proposed findings of fact and conclusions of law, which inexplicably invoked *only* the Louisiana Securities Law, the Fishmans included the conclusion that "[t]here is a causal connection between Morgan Keegan's material misrepresentations . . . and the Plaintiffs' losses." These assertions do not advance the argument that loss causation is not an element of section 712.

The Fishmans contend that a footnote to a sentence otherwise unrelated to loss causation contained in their reply to Morgan Keegan's post-trial memorandum saves their claim. This footnote stated that to succeed on their claim, the Fishmans needed to prove only the three elements explicitly contained in section 712. Even were we to ignore the unassuming location in which the Fishmans made this statement, this single sentence does not qualify as an argument regarding loss causation. In numerous filings in the district court, Morgan Keegan argued that loss causation is an element of a cause of action under Louisiana's Blue Sky law, citing a Louisiana decision, *Williams v. Edward D. Jones & Co.*[5] The Fishmans never squarely joined issue with this assertion or contended that the *Williams* decision should not be followed.

---

[4] *Taylor v. First Jersey Sec., Inc.*, 533 So. 2d 1383, 1385 (La. Ct. App. 1988) (stating that "[c]ourts may therefore look to the federal law and jurisprudence interpreting the securities law for guidance in interpreting the Louisiana [Blue Sky law] provisions").

[5] 556 So. 2d 914, 916 (La. Ct. App. 1990) (holding that loss causation is a required element under section 712).

No. 11-31090

In light of the Fishmans' statements in the district court, the trial judge unsurprisingly followed Morgan Keegan's pre- and post-trial suggestions that the Fishmans were required to prove that Morgan Keegan's conduct caused their loss. In its Findings of Fact and Conclusions of Law, the district court summarily held that loss causation is an element under the Louisiana Securities Law, citing *Williams*, the Louisiana intermediate court of appeals decision that Morgan Keegan had repeatedly invoked and that the Fishmans never challenged or distinguished.[6] The Fishmans arguably led the district court to commit the alleged error of which they now complain, but at a minimum, they stood "idly by, watching the proceedings and allowing the district court to commit [alleged] error."[7] Barring extraordinary circumstances, we will not consider an argument raised for the first time on appeal.

Such extraordinary circumstances as would merit ignoring our general rule are not presented in this case. As we have previously explained, "[e]xtraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it."[8] Though whether section 712 requires proof of loss causation is a pure question of law, it would not be a miscarriage of justice for us to let the district court's holding stand. As this appeal itself evidences, the question whether the Louisiana Securities Law requires proof of loss causation does not have a straightforward answer. The only Louisiana case on this issue, *Williams v.*

---

[6] *Fishman v. Morgan Keegan & Co.*, No. 10-2, 2011 WL 4853367, at *11 (E.D. La. Oct. 13, 2011) (citing *Williams*, 556 So. 2d at 916).

[7] *Rosedale*, 641 F.3d at 89 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999)) (internal quotation marks omitted).

[8] *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996) (per curiam) (citing *Verdin v. C & B Boat Co.*, 860 F.2d 150, 155 (5th Cir. 1988)).

No. 11-31090

*Edward D. Jones & Co.*,[9] held that a claim under section 712 "is governed by the causation standard articulated in numerous federal cases interpreting federal securities law."[10]  Although *Williams* is not binding on a federal court since it was decided by a Louisiana Court of Appeal, the district court, presented with no contrary authority, did not plainly err in following *Williams*'s holding.[11] While there may be good reasons for concluding that *Williams* was wrongly decided, those reasons were not before the district court.  Under these circumstances, we cannot say that the error committed by the district court—if any—is a miscarriage of justice.  We therefore decline to consider the Fishmans' loss causation argument.

## B

The Fishmans do not dispute the district court's conclusion that they could not prove that Morgan Keegan's alleged omission caused their loss.  In light of the foregoing, we need not address the Fishmans' remaining argument regarding section 712's knowledge element.

\*     \*     \*

Accordingly, we AFFIRM the judgment of the district court disposing of the Fishmans' Louisiana Securities Law claim.

---

[9] 556 So. 2d 914 (La. Ct. App. 1990).

[10] *Williams*, 556 So. 2d at 916.

[11] *See Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992) ("[A]lthough we are not bound by state appellate court decisions, we will not disregard them 'unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise.'" (alteration in original) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940))).